CARL W. WIDMER *v.* FORT SMITH VEHICLE AND
MACHINERY CORPORATION

5-4511                                              427 S. W. 2d 186

Opinion delivered April 15, 1968

*Carl W. Widmer,* pro se.

*Hardin, Barton, Hardin & Jesson,* for appellee.

J. FRED JONES, Justice. This is another appeal by
Carl Widmer from an adverse decision of the Sebastian
County Circuit Court wherein Widmer sought judgment
for more than $6,000.00 against Fort Smith Vehicle and
Machinery Corporation without the necessity of offer-

ing proof of the allegations in his complaint, and without the necessity of a trial of the issues on their merits.

On June 12, 1962, Widmer purchased a used Case grain combine from the appellee, Fort Smith Vehicle and Machinery Corporation, under a conditional sales contract for a total cash purchase price of $1,050.00 of which amount $250.00 was paid in cash. The contract provided for the balance to be paid in semi-annual installments of $269.25 on December 15, 1962, $218.45 on June 15, 1963, $227.70 on December 15, 1963, and $236.90 on June 15, 1964. The purchase agreement was drawn up on a printed form designated "Purchase Order," and the form was designed for use in the sale of John Deere equipment. Under the terms of the contract title was retained by the seller until the combine was fully paid for. A section designated "Warranty and Agreement" appears in bold type in the face of the form and this section of the contract provides as follows:

"Seller warrants each new John Deere machine to be free from defects in materials or workmanship. The obligation of Seller under this warranty is limited to replacing parts which prove defective with normal and proper use within a period of 6 months from date of delivery to Purchaser. *In no event shall Seller be liable for incidental or consequential damages or injuries including loss of crops or inconvenience or loss in performing contracts.*

"The above warranty is in lieu of all other warranties, statutory or otherwise, expressed or implied, all other representations to Purchaser, and all other obligations or liabilities with respect to such machines including implied warranties of merchantability and fitness. No warranty or representation whatsoever, expressed or implied, has been made by the manufacturer or wholesale distributor of John Deere machines and relied on by Purchaser, and Seller has no authority to make any such warranty

or representation on behalf of such manufacturer or wholesale distributor.

*"Seller makes no warranty (including the implied warranty of merchantability and fitness) or representation, expressed or implied, and disclaims all obligations and liabilities whatsoever, as to:* (a) batteries and rubber tires; (b) *any second hand goods;* (c) *tractor engines not manufactured by John Deere* except that this warranty includes Detroit Diesel 2 cylinder engines on light industrial and light agricultural tractors; and (d) *any other goods not specifically named in the first paragraph of this warranty* (whether or not sold on or with John Deere machines). *As to any such goods Purchaser agrees to look solely to the written warranty, if any, undertaken by the manufacturer thereof.* However, in the case of certain such goods Seller may elect to give a written warranty in the form of a certificate or other written statement specifically designated 'Warranty' in which case the provisions of such Warranty shall govern.

*"No assistance given to Purchaser by Seller or anyone acting with him in the repair or operation of the goods shall constitute a waiver on the part of Seller* of the conditions of this Warranty and Agreement.'' (Emphasis supplied.)

According to the complaint the combine was repossessed by the appellee in the latter part of December 1963, and according to the answer the combine was repossessed because Widmer had paid nothing on the purchase price except the down payment and had defaulted in the payment of all of the first three semi-annual installments at the time the combine was repossessed by the appellee.

On March 2, 1967, Widmer filed suit against the appellee alleging the purchase of the combine under an

express verbal agreement by Bill Woody, salesman and agent of the appellee, that the combine "as is" would harvest all of Widmer's grain without difficulty, and that the machine was so warranted; that the actual sale price of the combine was $950.00, but that Widmer agreed to give the appellee an additional hundred dollars to replace and repair any worn or damaged parts and to generally check and completely service the machine, etc.; that the combine was not delivered when agreed and that all the agreed work had not been done on the combine when it was finally delivered; that numerous breakdowns occurred after its delivery, and that one such breakdown lasted for more than a week before the machine was put back into service by the appellee's employees.

Widmer alleged that because the combine failed to perform as warranted, he was late in harvesting his grain crop, and because of this delay he was late in getting his bean crop planted, and because of the delay in planting the fall soy bean crop, a large part of that crop did not mature and that as a result of loss in grain and the soy bean crop, he was damaged in the amount of $6,500.00.

Under a second count in the complaint, Widmer alleged ownership of the combine and damage to the extent of its value, as well as punitive damages in unlawful trespass committed by appellee in repossessing the combine. On March 10, the appellee filed a "Motion to Elect" praying an order requiring the plaintiff, Widmer, to pursue his cause of action in either contract or tort. On March 14, Widmer filed "Request for Admission of Facts" requesting the appellee to admit as true eighteen paragraphs of statement including the alleged delay in harvest due to breakdowns and repairs, the consequential delay in planting 150 acres of soy beans resulting in failure of the soy bean crop to mature, and that the net fair market value of the soy bean crop that did not mature would have been $3,600.00.

On March 17, defendant filed a motion to quash the request for admissions, and on March 17, Widmer filed his response to defendant's motion to elect, concluding the response as follows:

"[A]ll rights and defenses as to both parties to the action and as to both Counts arise out of and come into being as a result of a purchase order dated June 12, 1962; the purchase order in question being the contract in this action; thus, it is apparent that plaintiff's action is based on contract, and defendant's motion for plaintiff to elect is superfluous."

On April 12, the trial court granted defendant's motion to quash the request for admissions; granted defendant's motion to elect and set the case for trial on May 2, 1967. Under date of April 20, 1967, Widmer filed a motion to vacate the order granting defendant's motion to quash request for admission of facts. He subsequently complied with the order to elect and elected to proceed under the first count of his complaint, and on April 21 he filed motion for summary judgment on the theory that since the defendant had not responded to the request for admission of facts which the court had quashed, the facts set out in the request would be taken as true and would entitle Widmer to a judgment on his complaint as a matter of law.

Appellee filed a demurrer to the complaint combined with its answer and also filed a motion for a summary judgment. On May 29, the cause was heard by the court sitting as a jury and the motions for summary judgment were denied. Widmer stood on his demand for a summary judgment and refused to go forward with evidence in support of his complaint. The complaint was dismissed by the trial court, and on his appeal to this court Widmer designates two points he relies on as follows:

"That the trial court erred in not deeming all requested admissions contained in request for admission of facts dated March 14, 1967, as being deemed admitted.

"That the trial court erred in not granting appellant's motion for summary judgment."

In support of the points appellant relies on, he argues in his brief, as follows:

"The plain, cold, and obvious facts are that appellee just has not complied with the plain and simple provisions of sub-part (2) of subsection (a) of Statute 28-358 concerning written objections and the explicit requirement for 'Notice of Hearing.' "

We consider the plain, cold and obvious facts to be, that appellant purchased a used Case combine and almost five years after he purchased it and some three years after it was repossessed for nonpayment, he filed suit on breach of warranties in his contract of purchase and alleged prospective damages measured in acres of grain he did not harvest and soy beans he did not produce.

The record reveals that appellant previously filed this identical law suit in the Sebastian County Circuit Court and followed exactly the same procedure in filing the identical requests for admissions of identical facts and when appellee complied with the requests in that case, appellant refused to go forward with his proof in the trial of the law suit but took a voluntary nonsuit. Appellant refiled the present suit and again filed identical requests for identical admissions, all of which he had a perfect right to do, but under the risk of becoming vexatious to the point of necessary intervention of the trial judge in protecting the rights of other parties to the law suit and the orderly conduct of the business of the court. We are of the opinion that the trial court did not abuse its discretion in quashing the appellant's

request for admissions and in requiring the appellant to proceed with his burden of proof in the orderly trial of this law suit on its merits.

Appellant has apparently overlooked two recent decisions of this court in which the argument he now advances in support of the points he relies on was rejected. In the case of *Widmer* v. *Wood*, 243 Ark. 457, 420 S. W. 2d 828, and again in *Carl Widmer* v. *R. G. Wood*, 243 Ark. 32, 421 S. W. 2d 872, we held that where objections to a request for admissions fail to include a notice for hearing thereon, such omission does not constitute a defect so fatal as to result in the defendant's admission of the truth of the requests. We so hold again in the case at bar.

It should not be necessary to point out that the discovery statutes were intended to assist in clarifying the issues in a law suit and help eliminate the elements of surprise and resulting delay in reaching a fair and impartial result at the trial of a law suit on its merits.

The purpose of discovery procedure is to simplify the issues at the actual trial and is not intended to take the place of the actual trial, nor is it intended to relieve the plaintiff of the burden of proving the allegations of his complaint in a civil case. The request for admissions within our discovery procedure is intended to eliminate the effort, expense and time involved in proving such facts as are admitted and is not intended as some new or modern legal method of winning law suits without trial. The object of the civil court trial still remains to attain justice between the parties as nearly as possible, and the rules of civil procedure, including discovery, are intended to aid in that object.

We know of no unique procedure under our code of practice whereby a plaintiff may completely abandon his burden of proof and safely rely on requests for admissions to which his adversary may finally grow weary

and fail to respond and thereby automatically· entitle the plaintiff to a judgment on any kind of complaint without any kind of proof or any kind of trial. The business of the circuit court of this state is serious business and although a party litigant has a right to represent himself and to devote his full time to the job if he desires to do so, he does not have the unlimited right to convert the rules of civil procedure into a game of legal wits and unduly burden his adversary with expense of counsel in responding to unnecessary and frivolous pleadings simply because they are permitted by statute. The trial court has a duty and inherent power to quash such pleadings and its actions in doing so will not be disturbed on appeal unless that discretion is abused.

Appellant seems to recognize, and we agree, that his entire law suit is predicated on a breach of warranty by appellee in the contractual sale of the combine. At page 35 of appellant's brief he states:

> "It must be kept in mind that the 12 SP Case Combine that is the subject of this action was sold with a warranty and guarantee on the part of appellee."

Appellee, in its verified answer to the complaint, specifically denied that any warranties of any kind were ever made in connection with the purchase of the combine as alleged by the appellant. Even if appellee had admitted all the other facts requested by appellant, there would have been no substantial evidence upon which the court could have rendered judgment for the appellant for breach of warranty.

Appellant cites *Hambrick v. Peoples Mercantile & Implement Co.*, 228 Ark. 1021, 311 S. W. 2d 785, in support of the warranties he alleged. The *Hambrick* case is very much in point with the case at bar but sustains appellee's contention that there were no warranties, rather than appellant's contention that there were war-

ranties. The *Hambrick* case involved the sale of a used cotton picker. The contract contained express warranties on new machines and merely stated that the warranties on the new machines did not apply to used machines. Thus, since the express warranty in the *Hambrick* contract did not apply to used machines, the used cotton picker was left subject only to such warranties as the law implies as to fitness for the purpose it was sold. The last paragraph of the *Hambrick* decision clearly distinguishes it from the case at bar. In referring to the seller who prepared the *Hambrick* contract, in the last paragraph of that decision we said:

> "It [the seller] failed to insert a declaration that there should be no warranty of second-hand goods and instead contented itself with the statement that such goods should not carry the warranty applicable to new machines. We therefore conclude that the implied warranty which the appellants sought to prove was not excluded by the agreement."

The exact wording of the contract in the *Hambrick* case is as follows: "*This warranty does not apply to used or secondhand goods,*" (emphasis supplied) whereas in the case at bar the language of the contract states affirmatively: "*Seller makes no warranty* (including the implied warranty of merchantability and fitness) or representation, expressed or implied, *and disclaims all obligations and liabilities whatsoever, as to: . . . any second hand goods.*" (Emphasis supplied). The other warranty provisions of the contract in the case at bar, quoted supra, are so clear and unambiguous nothing would be accomplished by restating them here.

The appellant alleged warranties and their breach by the appellee. The appellee, by verified answer, denied the existence of warranties and affirmatively disclaimed all obligations and liabilities whatsoever as to this second-hand Case combine. The burden was on the appellant to prove the existence of the warranties he alleged,

as well as their breach by the appellee, and this the appellant failed to do. As a matter of fact in order for appellant to have proved warranties in this case, it would have been necessary for him to have disproved the written terms of the contract he relied on. Appellant not only failed to prove the warranties and their breach by the appellee, as alleged in his complaint, he refused to even attempt to do so.

The judgment of the trial court is affirmed.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the result. When appellant elected to stand on his motion for summary judgment, his request for admissions had been quashed. Although he had filed a motion to vacate the order quashing his request, no action was taken thereon. By his election to stand on his motion for summary judgment, he waived the motion to vacate. Appellant could not have been entitled to a summary judgment unless the trial court was required to consider his request as admitted.

Appellee had filed a pleading called "Motion to Quash" in response to the request. While this is not a proper pleading on a request for admissions under the statute, we are committed to the rule that a pleading is to be treated according to its substance rather than its title. *Parker* v. *Bowlan*, 242 Ark. 192, 412 S. W. 2d 597. Appellee's motion stated that the request for these admissions in this case, after the same requests had been answered in a previous action on the same cause between the same parties, showed that it was made for the purpose of annoyance, expense, embarrassment and oppression contrary to the spirit and purposes of the discovery procedures. Appellee further stated that the requests were irrelevant and argumentative and that the requests were otherwise improper. The trial court granted the motion. This motion actually constituted a written objection to the requests, which, in effect, was sustained by the trial court.

Examination of the requests indicates that the motion may well have been granted upon the basis that some were irrelevant and some argumentative. Although the answer contains a general denial, it also contains certain specific statements which might be deemed to have sufficiently answered some of appellant's requests. Each request should have been phrased so that it could be admitted or denied without explanation. 2A Federal Practice & Procedure, Barron & Holtzhoff (Wright), Rules Edition, p. 503, Chapter 9, § 832. Some of the requests might well have been found to be argumentative because they would have been difficult, if not impossible, to answer without explanation.

Appellant elected to stand on his motion for summary judgment. The premise of that motion is that the court was required to take the requests to be admitted, because no notice of hearing of appellee's motion to quash was given. Appellant does not question here the propriety of the granting of the motion to quash by the court, except because of appellee's failure to give the notice.

Appellant cited only one case to support his contention, namely, *United States* v. *Kellert,* 101 F. Supp. 698. Since this case was decided before Arkansas adopted Rule 36 of FRCP, he urged that we adopted the construction of the rule in this case. While this rule of statutory interpretation is sound, it is doubtful that the decision of a district court would be as binding on us as that of an appellate court. Furthermore, there is a factor in the case upon which appellant relies that prevents the decision from constituting authority for the rule he urges. In the *Kellert* case, the court relied upon the failure of the defendant to attempt to obtain a hearing on his motion to dismiss the request for admissions at any time within the year intervening between the filing thereof and the granting of the summary judgment. No such period of time elapsed here and this motion was heard by the court. If there was undue delay about

the disposition of the motion, there was nothing to keep appellant from having asked for a hearing. We have previously held against appellant on this point and I think the holdings are proper. See *Widmer* v. *Wood,* 243 Ark. 457, 420 S. W. 2d 828; *Widmer* v. *Wood,* 243 Ark. 32, 421 S. W. 2d 872. I am not aware of any case that follows the rules suggested by appellant here which was decided before our adoption of Rule No. 36. It is interesting to note that at least two district courts have held that failure to accompany objections to a request for admissions with a notice of hearing does not render the objections ineffective where local practice and procedure has eliminated oral hearings on motions. *J. R. Prewitt & Sons, Inc.* v. *Willimon,* 20 FRD 149 (D. C. Mo. 1957); *Eastman Kodak Co.* v. *U. S. F. & G. Co.,* 34 FRD 490 (D. C. Md. 1964).

The majority opinion suggests that requesting the same admissions as were sought in a prior non-suited action may be considered as vexatious. I do not agree that this is the case. The statute clearly states that an admission made pursuant to request is for the purpose of the pending action only and may not be used in any other proceeding. If this is the intended effect of the holding by the majority, I consider it an ill-advised limitation of a very salutary provision of our procedural statutes. The scope and purpose of this provision is broader than simply clarifying the issues. It is also for the purpose of eliminating issues as to which there can be no controversy in good faith. Like the motion for summary judgment, the request for admissions is designed to remove the shielding cloak of formal allegations in a pleading. *Mid-South Ins. Company* v. *First National Bank of Fort Smith,* 241 Ark. 935, 410 S. W. 2d 873. Its use for that purpose should not be discouraged, particularly where that most evasive of all pleadings, the simple general denial, has been utilized.

I am authorized to state that BROWN, J., joins in this concurring opinion.