WILLIAM F. BOWER *v.* OLEETA MURPHY

5-4958                                        444 S. W. 2d 883

Opinion delivered September 29, 1969

*Frierson, Walker & Snellgrove,* for appellant.

*W. B. Howard* and *Jack Segars,* for appellee.

JOHN A. FOGLEMAN, Justice. This appeal involves questions pertaining to the application of our statutes

on discovery and related pretrial procedures as they relate to the physician-patient privilege. They arose in a personal injury action brought by appellee against appellant. She alleged that her injuries were sustained as a result of the automobile in which she was a passenger having been struck from the rear by a vehicle operated by the appellant on February 25, 1967. Her suit was filed on June 6, 1968. Appellant denied liability and pleaded other defenses. Appellee alleged that by reason of the collision she was caused to suffer severe and permanent injuries to the body generally and the neck and spine in particular.

On October 15, 1968, appellant filed a motion praying that the court, by proper pretrial order, require appellee to elect whether she would call medical witnesses at the trial and, if so, that appellant be permitted to take the deposition of Dr. James T. Robertson and Dr. Paul T. Stroud. The motion was heard by the trial court on the date of its filing. By written stipulation, it was agreed that if the deposition of Dr. James T. Robertson of Memphis, Tennessee, were taken, he would testify that he is a physician specializing in neurosurgery and that appellee was treated by him both before and after February 25, 1967. It was also stipulated that if the deposition of Dr. Paul T. Stroud of Jonesboro were taken he would testify that he is a practicing physician and that he treated appellee subsequent to the incident complained of and had caused X-rays to be made of her on February 27, 1967. It was also stipulated that appellee's counsel objected to any testimony by either physician as to any observations, treatment, diagnosis or communications on said occasions in the absence of a ruling of the trial court on appellee's objection. The trial court held that it was without power to grant the relief prayed in the motion.

On October 18, 1968, appellant took the discovery deposition of appellee. She admitted on that occasion that Dr. Stroud had treated her for other conditions

prior to her injury. She also admitted that she had been treated by Dr. Robertson during the preceding three years and was still under his care. She refused to answer inquiries as to the conditions for which these doctors had previously treated her on the ground of privilege. She also failed to answer and objected to a question asking whether she had ever been told she had arthritis of the spine or neck. Further interrogation was abandoned when appellee's counsel stated that he was going to instruct her not to answer as to any communication made by her to any doctor, at any time, including the injury of which she complains and not to answer any question regarding what any doctor may have told her, at any time, relating to any condition from which she might suffer.

On October 24, 1968, appellant filed a motion to require appellee to answer these and other proper questions addressed to her concerning her previous medical condition and treatment. In her response, appellee again asserted her right to refuse to answer any question concerning any treatment administered to her by any physician, or any communication made by her to any physician for the purpose of enabling him to diagnose, prescribe, treat or do any act for her as a physician or surgeon while attending her in a professional character. Appellant also moved that she be required to answer certain inquiries by Dr. Barnett, to whom she had gone for examination upon appellant's request. The trial court found that the appellee properly refused to answer all these questions because they were within the medical privilege.

Upon the hearing of a motion to require appellant to deliver X-rays taken by Dr. Barnett and exhibited to his deposition for examination and copying, appellee again asserted that she had not waived her claim of privilege.

The case was tried on November 1, 1968. The fourth

witness called by appellee was Dr. Paul Stroud, her family physician. He interpreted the X-rays taken by him as showing evidence of existing minor osteoarthritis of the neck. He also found evidence of muscle spasm in appellee's neck. Dr. Stroud compared the X-rays made by him in February of 1967 with those made by Dr. H. C. Barnett, employed by appellant to examine appellee. By this comparison he found increased and additional evidence of degenerative osteoarthritis of the spine of appellee. He stated that muscle spasm was usually associated with muscle trauma but supposed that one could have it with marked arthritis. He stated that appellee had had headaches both before and after her injury but that she had characterized them as being headaches of different types. He did not recall her having made any complaints of tenderness in the region of the neck or any limitation of motion of her neck prior to this injury. Dr. Stroud stated on direct examination that the symptoms of the appellee, in his opinion, could all be produced by an arthritic syndrome with possibly a little nervous tension or they could all be produced by trauma as a result of the collision. According to him, a myelogram by a neurologist would tend to indicate whether appellee's symptoms were attributable to the trauma or to arthritic changes. Dr. Stroud had no opinion whether the traumatic experience caused the existing symptoms of appellee either in whole or in part.

Immediately after the direct examination of Dr. Stroud was concluded, appellant moved for a continuance alleging that by reason of previous claims of privilege by the appellee, appellant had been deprived of any opportunity to obtain information as to the condition of appellee at and prior to the time of her alleged injuries and as to any disabilities which she may have suffered at or prior to the time of the collision. He also alleged he had been deprived of any opportunity to make a comparison of X-rays similar to that made by Dr. Stroud. It was asserted that appellant's counsel was unable to properly cross-examine the medical witnesses of-

fered by appellee without expert advice and interpretation by a physician and that appellant could not be adequately prepared to defend without information as to appellee's medical history. Continuance was sought until such time as appellant had been afforded an opportunity to interrogate all physicians who had examined and treated appellee for conditions of which she complained, to avail himself of expert counsel as to the interpretation of various X-ray pictures offered and to obtain the testimony of expert witnesses in rebuttal of the findings and opinions of physicians offered as witnesses by appellee.

After the motion for continuance was denied, Dr. Stroud testified he had suggested that Mrs. Murphy see Dr. Robertson, a neurologist in Memphis, and ask him to check the condition of her neck because she was already under his care. Appellee later told him that she had not mentioned the matter to Dr. Robertson and he said, "For God's sake do it." He stated that the condition for which he suggested a myelogram is within the field of Dr. Robertson. Dr. John T. Gray, another physician called as a witness by appellee, testified that there was evidence appellee had a preexisting arthritic condition and that it is difficult to say whether the minimal arthritic condition she had would account for a loss of lordotic curve in her neck or whether it would be attributable to trauma. He detected a definite increase in arthritic changes and in calcification during the five months intervening between his examination of appellee and that of Dr. Barnett. He stated that one might conclude that whatever change occurred between these examinations was the result of progress of the arthritis and that arthritis is a disease. He did feel that the preexisting arthritis had been aggravated by the accident.

While appellee testified that she did not know she had any arthritis prior to the accident, she admitted that she had gone to Dr. Robertson and another Memphis physician for headaches. She stated that Dr. Robertson

did not make any X-rays of her neck or spine after the accident although he had made some before the accident.

Appellant relies upon the court's denial of his motion for pretrial discovery of medical evidence, as well as upon the denial of his motion for continuance, for reversal. He strongly urges that we adopt the rule stated in *Mathis* v. *Hilderbrand*, 416 P. 2d 8, 21 A. L. R. 3d 907 (Alaska 1966) and *State ex rel McNutt* v. *Keet, Judge*, 432 S. W. 2d 597 (Mo. 1968). In those cases it has been held that the filing and maintenance of an action to recover for physical injuries is, in itself, a waiver of the physician-patient privilege to the extent that attending physicians may be required to testify on pretrial deposition and that medical records and information must be disclosed on pretrial. Appellee contends that this very argument has been rejected by this court in *Maryland Casualty Company* v. *Maloney*, 119 Ark. 434, 178 S. W. 387. We agree with appellee in this argument. The *Maloney* case was cited with approval and followed in *American Republic Life Insurance Company* v. *Edenfield*, 228 Ark. 93, 306 S. W. 2d 321. We do not feel that the discovery and pretrial statutes are in such conflict with the decisions in those cases that we should depart from the rule therein stated.

Appellant argues, however, that these statutes permit the trial court to require a plaintiff in an action such as this to state whether or not medical evidence will be offered and thereupon to permit discovery of such evidence by the defendant. Our discovery statutes [Ark. Stat. Ann. §§ 28-348—28-359 (Repl. 1962)] are based on the Federal Rules of Civil Procedure on Deposition and Discovery (Rules 26-37). In most particulars the statutes are verbatim copies of the rules. The pretrial conference statutes [Ark. Stat. Ann. §§ 27-2401—27-2403 (Repl. 1962)] were patterned after Federal Rule of Civil Procedure 16. This court has long recognized the salutary purposes of discovery procedures and the applicability of the principle of liberal construction

of the act to accomplish those purposes. In *Arkansas State Highway Commission* v. *Stanley*, 234 Ark. 428, 353 S. W. 2d 173, 4 A. L. R. 3d 749, we said:

> "The language of this statute was taken verbatim from Federal Rule 34. It follows that our legislature, in adopting the wording of the federal rule, also adopted the principle of liberal construction that had been announced in the leading case of *Hickman* v. *Taylor*, 329 U. S. 495, 91 L. Ed. 451, 67 S. Ct. 385: 'We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.' "

In *Widmer* v. *Ft. Smith Vehicle and Machinery Corporation*, 244 Ark. 626, 427 S. W. 2d 186, we said:

> "It should not be necessary to point out that the discovery statutes were intended to assist in clarifying the issues in a law suit and help eliminate the elements of surprise and resulting delay in reaching a fair and impartial result at the trial of a law suit on its merits."

This court has long recognized that a litigant may be required to disclose the names of persons having knowledge of material facts in issue. *Dritt* v. *Morris*, 235 Ark. 40, 357 S. W. 2d 13. When circumstances are such that justice requires it, a party may be under a duty to disclose the identity of witnesses he expects to call. See *King* v. *Carden*, 229 Ark. 929, 319 S. W. 2d 214.

We find certain language of the Supreme Court of Washington particularly appropriate in this situation. It said:

"We would agree that whenever it does become apparent that the plaintiff must decide in favor of waiver, then that waiver should not be delayed until the trial itself. The plaintiff should not have the unfair tactical advantage of a trial waiver which almost invariably results in a continuance and, frequently, in the dismissal of the action and another trial.

Certainly, at some stage in the pretrial proceedings, the plaintiff must decide whether he is going to call his treating physician or physicians, and, if he is, then the defendant is entitled to know it in time to take the deposition of such physician or physicians and prepare to meet their testimony.

* * * The federal courts, operating under identical rules, seem to have had little difficulty in accelerating the waiver of privilege on a case-to-case basis without the necessity of a blanket waiver.[1]

* * * In other federal cases, the trial court has compelled, upon request, the delivery of a list of the witnesses (together with their addresses) to be offered on the trial. * * * The presence of his treating physician on the plaintiff's list of witnesses is regarded as evidencing his intent to waive the privilege and may subject the physician to deposition. If the plaintiff desires to prevent the deposition being taken, or to limit its scope, he has the burden of convincing the trial court that the deposition

---

[1]For example see: *Burlage* v. *Haudenshield,* 42 F. R. D. 397 (D. C. Ia. 1967); *Greene* v. *Sears Roebuck & Company,* 40 F. R. D. 14 (D. C. Ohio 1966); *Awtry* v. *United States,* 27 F. R. D. 399 (D. C. N. Y. 1961); *Mariner* v. *Great Lakes Dredge & Dock Company,* 202 F. Supp. 430 (D. C. Ohio 1962). (Footnote ours.)

should not be taken or to show good cause for such limitation.

We can see no reason why our trial courts, exercising the same broad discretion, should not treat a plaintiff's inclusion of his treating physician among his list of intended witnesses at trial as indicating his intent to waive his privilege. Such an apparent accelerated waiver could then enable the defense to utilize the full range of pretrial discovery procedures as to the treating physicians named and to the same extent and subject to the same controls as would govern discovery after waiver at trial.'' *Phipps* v. *Sasser,* Wash., 445 P. 2d 624 (1968).

Even though the Washington court ultimately concluded that in the particular cases before them there was not a sufficient showing to justify the taking of the depositions of the injured parties' treating physicians, in those cases the defendants in personal injury actions had undertaken to take the depositions of the physicians without any application to the trial court and without asking any disclosure of the identity of the witnesses for the injured parties. This result in no way dilutes the strength of the statement that the inclusion of a treating physician among the list of a party's intended witnesses could be taken to indicate the intent to waive the privilege.

We think that the motion made by appellant in this case was not as broad as it might have been. Regardless of whether the circumstances here were such as to have justified requiring appellee to disclose the names of all of the witnesses she intended to use, we think that she could properly have been required to state the names of any medical witnesses she expected to call. This motion simply asked that she be required to state whether she proposed to call any physician as a witness on her behalf. This was clearly within the range of permissible

discovery and would have, at an appropriate stage in the proceedings, informed the court and the opposing party whether or not appellee intended to rely upon, or waive, her claim of privilege. The failure of the court to require appellee to do so was certainly prejudicial to appellant in the preparation of his defense.

It is widely recognized in the decisions of the courts of other jurisdictions that circumstances such as developed here would inevitably require a continuance or a mistrial when a plaintiff had consistently invoked the privilege until the actual calling of a physician in the course of a trial. See *State ex rel McNutt* v. *Keet, Judge,* 432 S. W. 2d 597 (Mo. 1968); *Mathis* v. *Hilderbrand,* 416 P. 2d 8, 21 A. L. R. 3d 907 (Alaska 1966); *Phipps* v. *Sasser,* supra; *Awtry* v. *United States,* 27 F. R. D. 399 (D. C. N. Y. 1961). The very situation which arose in the trial is that sought to be avoided through the use of pretrial procedures. We have no hesitation in holding that the trial court did have the power to grant the motion of appellant. Its failure to do so constitutes reversible error. We do not intend to say that there is no situation in which an injured party could show cause why he should not be required to make an election as to the exercise of his privilege. We do say that there was no such showing in this case.

In view of the position we take on the first point for reversal, it seems unlikely that other points asserted by appellant will arise upon a new trial of this case —at least in the same background in which they arose on the first trial. The one exception is the assertion that it was error to permit appellee to offer evidence of the difference in market value of the automobile before and after the collision in which appellee was injured. The theory upon which this evidence was offered was that it was admissible for the purpose of showing the force of the impact. We do not see how this particular evidence could be admissible for that purpose. It is true that we have held that a repair bill is admissible in evidence for the purpose of showing the force of the impact in

an automobile collision; however, the difference in market value could scarcely be considered to be a measure of the force of an impact. We do not consider the introduction of this evidence in the first trial as prejudicial error, because there was detailed testimony as to the parts of the vehicle damaged and the parts repaired and an admission by the witness through whom the testimony was offered that the vehicle could have been repaired more cheaply than his statement as to the difference in market value.

The judgment is reversed and the cause remanded for a new trial.