Hoyt ROUNSAVILLE et ux *v.*
ARKANSAS STATE HIGHWAY COMMISSION

75-76                  ·                527 S.W. 2d 922

Opinion delivered October 13, 1975

*William G. Wright* and *H. Clay Robinson,* for appellants.

*Thomas B. Keys* and *Robert E. Diles,* for appellee.

J. FRED JONES, Justice. This is an appeal by Hoyt Roun-saville and his wife from a circuit court judgment for damages to the Rounsaville land following condemnation by the appellee Arkansas State Highway Commission in connection with the acquisition of right-of-way for Interstate 540 in Van Buren, Crawford County, Arkansas.

The appellants owned an 80 acre tract of land on the outskirts of Van Buren and the appellee took fee title to .13 acres by condemnation and deposited $50 into the registry of the court as just compensation. The appellant owners prayed damages in the amount of $20,000. A jury trial resulted in a verdict in favor of the appellants landowners for $250 and judgment was entered thereon.

The appellants rely on a single point for reversal as follows:

"The trial court erred in overruling objections to certain testimony of the appellee's expert [Mr. McMurrough]."

Mr. Robert Gelly testified as an expert for the appellant landowners. He said that in his opinion the highest and best use of the property was for development purposes; that in his opinion the 80 acre tract prior to the taking on August 3, 1966, had a fair market value of $750 per acre, or a total of $60,000; that following the taking, and by reason thereof, the fair market value of the remaining 79.87 acres was reduced to a fair market value of $500 per acre or $39,925, making a difference of $20,065 as damages to the tract caused by obstructions which would prevent the normal flow of building or development in the direction of the Rounsaville tract. Mr. Gelly testified on cross-examination and also on redirect examination that he considered some sales of comparable land in the vicinity of the Rounsaville land in arriving at his opinion as to the market value of the Rounsaville land.

The owner Mr. Rounsaville testified that prior to the taking his property was worth around $800 per acre and that immediately after the taking, and by reason thereof, its value was reduced to $350 per acre, leaving a difference in the fair market value in the amount of $36,000 as his damages and just compensation.

Mr. Ken McMurrough, an expert appraiser who testified for the appellee Highway Commission, said that he made a market study in arriving at his opinion as to the market value of the Rounsaville property. He said that after making a market study of the sales in the general area, he formed an opinion as to the market value of the Rounsaville property. He said he considered the property to have a before taking value of $47,000. He said the property was partially in a creek bottom and partly on upland, and that he considered approximately 60 acres of the property suitable for residential development which he considered to have a value of $500 per acre. He said that about 20 acres of the property was low, creek bottomland which he considered to be of strictly agricultural value he estimated at $250 per acre. He said that the .13 of an acre taken by the Highway Commission was in a low area of a creek bottom and that he did not consider the

taking as having an adverse effect on the remainder of the land. He said that in his opinion the value of the area taken was less than $50, which he rounded off then at a value of $50, and that the remaining land had an after taking value of $46,950.

On direct examination Mr. McMurrough testified in part as follows:

"Q. In making your study at the time of the project being in progress up there, did you make a market study in regard to the value of the land of Mr. Rounsaville as well as other lands?

A. Yes, sir. I made a market study of the market value in the general area.

Q. All right, did you consider other sales in the near vicinity of Mr. Rounsaville?

A. Yes, sir. I considered sales of property, similar property, either in whole or in part to the Rounsaville property.

Q. All right, will you refer there, and I will ask you in regard to a sale from VanZandt to Sagely. Did you consider this?

A. That was one of the sales that I considered in my valuation to the Rounsaville property, it being in fair proximity to the subject property."

Mr. McMurrough was then asked and testified as to the sales of other lands in the area having similar characteristics as the Rounsaville tract. He then testified as follows in regard to one of the sales in the vicinity:

"Q. Okay, did you check the court records to verify this sale?

A. I verified this from the Circuit Clerk's records in the court house and also talked to Mr. VanZandt."

The appellants objected to the witness testifying that he talked with the original owners and purchasers of the property in regard to the sale price on the ground that the testimony was hearsay as to value, and then the record appears as follows:

"Q. All right, Mr. McMurrough, the sale from Mr. VanZandt to Sagely, will you refer to your records and I'll ask you again if you checked the court records to see if this was made a public record, this sale?

A. This sale took place on April the 6th, 1966, it's recorded in Book 256 at Page 20, in the Circuit Clerk's records, Crawford County, and this is Mr. VanZandt to Mr. Sagely, eight and three-tenths acres for a consideration of—

MR. ROBINSON: Now, Your Honor, I object. The question he asks was is it on the records and he has testified it's in the records, yet any further testimony is not responsive to the question.

THE COURT: All right, we'll let him ask the question. I'm sure he will.

MR. DIAL: Q. Mr. McMurrough, was the consideration shown in the court records?

A. I'm not sure whether the consideration was indicated in the deed records; however, this sale and all the other sales that I have testified here today, or will testify to, I have either talked to the buyer or the seller and got verification from both of them about the circumstances surrounding these sales to determine that they were fair, arms-length transactions and the consideration was verified by either the buyer or the seller or the realtor making the sale, and in addition to that, I think the most of the sales, maybe all of them I testified to here today, have been testified to in this court at the time of my appraisals."

Mr. Ken McMurrough, the expert appraiser who

testified for the Highway Commission, and whose testimony is questioned on this appeal, was qualified as an expert by over 12 years employment as a staff appraiser for the Highway Department and prior to that he was in the insurance and real estate business for six or seven years. He was a licensed real estate broker and had appraised property in all sections of Arkansas. His qualifications as an expert were not questioned in this case.

The actual crucial question presented was whether Mr. McMurrough's testimony as to amounts paid in the sale of comparable land was admitted as independent evidence of value of the land being condemned. Now, had he testified that VanZandt sold similar land to Sagely for $600 per acre and, therefore, since the land was comparable to the land condemned, the market value of the condemned land was $600 per acre, such testimony would have presented a different question than the one that is presented and, perhaps, such evidence as stated in Nichols on Eminent Domain, vol. 5, § 21.3 [1], "must be proved with as much formality as any other material fact. . . . " But it must be remembered that in this case McMurrough was testifying as an expert witness and his opinion testimony as to the value of the land involved would have been admissible strictly as opinion testimony without further qualification as to how he arrived at his opinion.

In Nichols on Eminent Domain, vol. 5, § 21.3 [2], is found the following:

> "Even in the states which reject sales of similar lands as independent evidence of value, it is usually held that on cross-examination of an expert witness testifying as to value, for the purpose of testing his knowledge of the market value of land in the vicinity, he may be asked to name such sales of property (and the prices paid therefor), as have come to his attention. . . . "

Of course, the sale of similar lands as independent evidence of value has been so thoroughly accepted in Arkansas that the citation of cases is not necessary. In the case of *People* v. *Alexander*, 27 Cal. Rptr. 720, 212 Cal. App. 2d 84, the court said:

"The specific question involved is whether in describing comparable sales the witness may rely for the facts upon his own investigation of records in the recorder's office, and in the courts, the stamps upon deeds and the statements of those who personally participated in the sales. The important evidentiary point involved is whether or not the opinion of value which the witness has given is sustained by proper reasons. From a practical standpoint, if each person previously involved in effecting comparable sales should have to be called to the stand to establish the detailed facts of such sales, it would lengthen litigation of this kind out of all reason and would make it almost impossible for the State or defending landowners to make a proper showing as to valuation opinion within a reasonable time and at reasonable expense. Therefore, within proper limits, facts acquired by hearsay and used by a valuation expert in support of his conclusion that certain sales are comparable and therefore furnish support for his opinion concerning value have been customarily received in evidence in this state. In People ex rel. Dept. of Public Works v. Donovan, 57 Cal. 2d 346, 19 Cal. Rptr. 473, 475, 369 P. 2d 1, 4, it is said:

'An expert may detail the facts upon which his conclusions or opinions are based, even though his knowledge is gained from inadmissible or inaccurate sources. (Betts v. Southern California etc. Exchange, 144 Cal. 402, 77 P. 993; McElligott v. Freeland, 139 Cal. App. 143, 33 P. 2d 430.)' "

In the case of *United States* v. *18.46 Acres of Land, etc.*, 312 F. 2d 287 (1963), a part of a dairy farm was being condemned and the difference in fair market value of the property involved was the measure of damages. The owner testified to $30,000 before and $15,000 after the taking, and his expert testified to $30,000 and $20,000. The government's expert testified $27,000 and $24,500. The jury returned a verdict of $12,000. The government's expert testified that the best method of arriving at market value was the use of comparable sales and the court held this to be the rule generally recognized. The expert witness stated that he "found four farms, one

of them immediately adjacent that had sold only the year before." At this point the counsel for the appellee objected to the witness stating any price with respect to the comparable sale on the ground that it would be hearsay. The trial court ruled that any answer was hearsay unless the witness was present when the deal was consummated. In reversing the district court, the United States Court of Appeals, Second Circuit, quoting from *United States* v. *5139.5 Acres of Land, Etc.,* 200 F 2d 659, at page 662, said:

> " 'Cases can readily be imagined where the court in its discretion should exclude evidence of this sort because of remoteness in time of the sales or because the property sold was not similar to that being valued, but it should not ordinarily be excluded under the hearsay or best evidence rules. * * * Ordinarily evidence as to facts of this sort given by an expert as the basis of his opinion as to value comes with a sufficient guaranty of trustworthiness to justify the relaxation of the hearsay and best evidence rules.' "

The court then continued:

> "In the case at bar, the court excluded evidence of the comparable sales as hearsay and not in the exercise of discretion, but had the court done the latter, we think exclusion of the evidence would also have been erroneous on the state of the record before us."

In the case of *United States* v. *5139.5 Acres of Land, Etc.,* 200 F. 2d 659, the government had condemned some land and had deposited $30,300 as just compensation. A jury verdict fixed the value of the tract at $64,762.62. The government appealed alleging error in the rejection of testimony. In reversing the judgment of the district court, the United States Court of Appeals for the Fourth Circuit said:

> "One of the witnesses for the government who had testified as an expert was asked as to sales of similar lands in the community near the time of the condemnation which he had taken into consideration in arriving at his estimate of value. He proposed to testify as to a

number of sales which he had learned of in his investigation and which he had verified by examination of the land records in the county. This testimony was excluded because the records were not produced or the persons who had participated in the sales called as witnesses. This, we think, was error. While the admission of testimony of this sort was a matter very largely within the sound discretion of the trial judge, the exclusion here rested, not upon a sound exercise of that discretion, but upon an erroneous application of the hearsay and best evidence rules. The witness within reasonable bounds should have been allowed to give the jury the facts upon which his opinion as to value was based; and it would unduly hamper the production of such testimony and needlessly prolong the trial to require that the sales be proved with the particularity that would be necessary in suits to enforce the contracts relating thereto. The hearsay and best evidence rules are important, but they should not be applied to prevent an expert witness giving in a reasonable way the basis of his opinion. As said by this court in United States v. 25.406 Acres of Land, 4 Cir., 172 F. 2d 990, 993, certiorari denied 337 U.S. 931, 69 S. Ct. 1496, 93 L. Ed. 1738, 'Testimony as to value would be worth little or nothing, if witnesses were not allowed to explain to the jury their qualifications as experts and the reasoning by which they have arrived at the expert opinion to which they testify; and the rule is that they may thus give the grounds of their opinions. Wigmore on Evidence 2d Ed. sec. 562; Lewis, Eminent Domain 3d ed. Sec. 654.' "

In the Kentucky case of *Stewart* v. *Commonwealth*, 337 S.W. 2d 880, the landowner was awarded judgment of $63,000 as the value of her property in a condemnation proceeding. The property owner appealed contending that the award was inadequate because of prejudicial error in the exclusion of certain evidence relating to the sale of comparable property. A part of the evidence alleged to have been erroneously excluded included the testimony of a real estate expert which was excluded on the ground that his information was based on hearsay. In reversing the trial court, the Supreme Court of Kentucky on this point said:

"It is quite often true that the most thorough, comprehensive and accurate professional appraisals are based almost entirely on 'hearsay' in the legal sense of the word. Persons who appraise or deal in real estate professionally make it their business to keep abreast of current transactions. The value of an appraisal depends very largely on the manner in which it is developed. It is of importance to the court and jury to know how it was made and on what information it was based. If some or all of that information was acquired by hearsay, but through the customary channels of the trade, or by methods recognized as standard in the making of appraisals, we see no useful purpose in a rule of absolute exclusion. Therefore, confining the effect of this opinion to witnesses whose qualifications include experience in appraising or dealing in real estate *as a business,* we hold that testimony as to the prices paid in comparable sales is not inadmissible merely because it is secondary or hearsay evidence. Since Mr. Hennessy was professionally qualified as an appraiser and real estate broker, the fact that he had verified the prices by personal contact with the purchasers was a sufficient basis to admit his testimony on the comparable sales."

We are of the opinion that the trial court did not abuse his discretion or commit reversible error in admitting the testimony of Mr. McMurrough under the record before us in this case. Furthermore, most of Mr. McMurrough's testimony which the appellants contend was error had already been testified to by the appellants' own expert witness Mr. Gelly. Of course, Gelly's testimony, as to comparable land values, was elicited on cross-examination without objection and, the appellants seem to concede that his testimony was admissible because it was elicited on cross-examination. In any event, the validity of Gelly's testimony as to the price on comparable sales is not questioned. Gelly testified that the sale from VanZandt to Sagely was 1,290 acres and McMurrough said it was 1,205 acres. Gelly said the Burns to VanZandt sale was $600 per acre and McMurrough testified that it was $600 per acre. Both witnesses testified that in the Tankersly to Edwards transaction the sale price was $345 per acre. Consequently, if the

court had committed error in the admission of McMurrough's testimony on the ground of hearsay, it would have been harmless error in the light of Gelly's testimony. See *Kansas City S. R. Co.* v. *Morrison,* 103 Ark. 522, 146 S.W. 853 (1912); *Mine LaMotte Lead & S. Co.* v. *Con. Ant. Coal Co.,* 85 Ark. 123, 107 S.W. 174 (1907); *Nelson* v. *Busby,* 246 Ark. 247, 437 S.W. 2d 799 (1969); *Bower* v. *Murphy,* 247 Ark. 238, 444 S.W. 2d 883 (1969).

The judgment is affirmed.