Delois MARTIN, Appellant,

v.

The ARKANSAS ARTS CENTER,
Appellee.

No. 79–2042.

United States Court of Appeals,
Eighth Circuit.

Submitted June 10, 1980.

Decided Aug. 18, 1980.

Matthew F. Horan, Fayetteville, Ark., for appellant; John W. Walker and Ralph Washington, Little Rock, Ark., on brief.

Walter A. Paulson and G. Ross Smith, Friday, Eldredge & Clark, Little Rock, Ark., for appellee; Tucker Raney Mathis, Little Rock, Ark., on brief.

Before ROSS, Circuit Judge, GIBSON, Senior Circuit Judge, and HANSON, Senior District Judge.[*]

FLOYD R. GIBSON, Senior Circuit Judge.

Delois Martin appeals the judgment of the United States District Court for the Eastern District of Arkansas [1] finding the Arkansas Arts Center (Center) not to have engaged in racial discrimination in violation of 42 U.S.C. §§ 1981 [2] and 2000e et seq. (1976) [3] with regard to her dismissal from her position of employment. On appeal, Martin contends that the trial court erred in finding (1) that the Center had articulated a legitimate reason for her dismissal, and (2) that she had not met her burden of proving the reasons given for her dismissal were pretextual. Martin also alleges that the trial court made a number of erroneous evidentiary rulings. We affirm the District Court.

On March 17, 1976, Delois Martin, a black female with an undergraduate degree in business, filed a charge of racial discrimination with the Equal Employment Opportunity Commission against the Arkansas Arts Center, a non-profit corporation located in Little Rock. After receiving her right-to-sue letter, Martin filed a class action suit against the Center on January 5, 1977. In the interim, on June 11, 1976, Martin had been dismissed from her employment position with the Center. On June 20, 1979, the District Court denied Martin's motion for class certification. Martin's case was tried to the court on July 2 through July 5, 1979. On November 9, 1979, the court filed a written memorandum opinion and entered judgment in favor of the Center. *Martin v. Arkansas Arts Center*, 480 F.Supp. 156 (E.D.Ark.1979).

The Arkansas Arts Center serves the Little Rock community in both an educational and cultural capacity. The Center receives funding through private and public sources, including the federal government. On May 21, 1974, Martin applied for the position of full charge bookkeeper at the Center. Martin was hired on June 11, 1974, and began work one week later. At the time of Martin's hiring, Townsend Wolfe, the executive director of the Center, informed her that her salary was to be $6,000 per year during a sixty-day probationary period, at the end of which time her salary would be increased to its permanent level of $7,800.

Jacquelyne Simmons, the Center's retiring full charge bookkeeper, supervised Martin during her probation. Simmons left on a vacation in September. Prior to her return, Martin had completed her probation and received a salary increase to $7,800 per year. Upon returning, Simmons, feeling aggrieved, requested and received a salary increase to $7,800. Simmons had thirteen years prior experience as full charge book-

---

[*] The Honorable William C. Hanson, Senior United States District Judge, Northern and Southern Districts of Iowa, sitting by designation.

[1] The Honorable Elsijane T. Roy, United States District Judge, Eastern District of Arkansas.

[2] 42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punish-

ment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

[3] 42 U.S.C. § 2000e–2(a)(1) provides in relevant part:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

keeper with the Center. Wolfe, the executive director, granted Simmons the pay increase in the interests of equity.

Simmons continued to supervise Martin through December. However, Simmons began noticing frequent and repeated errors in Martin's work product. These included filing errors which resulted in the duplicate payment of invoices, improper numbering of checks, and the inability to properly balance the Center's books or to prepare the financial statements. In light of these difficulties, Wolfe requested that Simmons postpone her retirement. in order that she might further train Martin for the position of full charge bookkeeper.

In March 1975, Wolfe requested that another employee, Leon Kaplan, prepare a memorandum concerning Martin's difficulties. Kaplan's memorandum listed bookkeeping errors as large as $9,900 in addition to more frequent minor mistakes. Wolfe then decided that Martin was not currently capable of fulfilling the position of full charge bookkeeper. Simmons was offered a $2,200 salary increase to remain at the Center. Simmons accepted. Wolfe, however, did not terminate Martin. Instead, Wolfe offered Martin the position of assistant bookkeeper with cashier duties, to begin when the present cashier resigned in June 1975.

In January 1976, Simmons again expressed her intention to retire effective March 31, 1976. Martin applied for the soon-to-be-vacant position of full charge bookkeeper. Wolfe, on March 3, informed Martin that she would replace Simmons. Wolfe, however, had previously expressed to Martin his grave reservations with regard to her ability to function in that position. Wolfe again expressed his reservations to Martin when he promoted her.

Martin was given another probationary period as full charge bookkeeper beginning March 3, 1976, and ending June 11, 1976, when she was dismissed. During the latter two months of this probationary period, Martin did not have Simmons to guide her and correct her errors. Martin did have an assistant bookkeeper with cashier's duties to help her with the work load. Under Martin's brief tenure, the bookkeeping operations of the Center became enmeshed and ground to a virtual standstill. Despite the fact that the books were current upon Simmons's retirement on March 31, neither the April nor May financial report of the Center had been prepared as of the date of Martin's dismissal.

On March 17, 1976, Martin filed her racial discrimination charge with the Equal Employment Opportunity Commission. In response, on April 16, 1976, Wolfe requested Simmons, who was in retirement, to prepare a memorandum on Martin's job performance. Later in April, when it was becoming evident that the bookkeeping operations of the Center were in disarray, Wolfe also requested Kaplan to report on Martin's progress as full charge bookkeeper. Both Simmons's and Kaplan's reports were highly critical of Martin's ability to function in an independent, supervisory position. Kaplan's report detailed a number of serious errors made by Martin in her brief tenure as full charge bookkeeper, including a $50,-000 miscalculation in the Center's fiscal totals during the 1976 budget meeting, and misplaced tuition checks which were later located in Martin's old desk after it had been moved to another office.

On May 17, 1976, Wolfe inquired of Martin when the April financial report would be available. Martin could not give a definite response. Wolfe then hired the accounting firm of Peat, Marwick and Mitchell to ascertain whether extra personnel were needed. The report was prepared by Don Smith, a Certified Public Accountant. He concluded that the Center needed no more than two employees for efficient bookkeeping. The report also detailed the current status of the bookkeeping functions at the Center. The report stated in part that (1) the general ledgers had not been posted for April or May; (2) the accounting control record had not been completed for April or May; (3) the cash receipts book did not indicate the entrance of the bank deposits for May or June; (4) bank statements . were not summarized and posted for April

and May; and (5) invoices were not current in payment. *See Martin v. Arkansas Arts Center, supra,* 480 F.Supp. at 160–61. Upon receipt of the accounting firm's report, Wolfe dismissed Martin from her position of full charge bookkeeper on June 11, 1976.

*Sufficiency of the evidence*

The District Court, in its memorandum opinion, found it unnecessary to determine whether Martin made out a prima facie case of race discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Vaughn v. Westinghouse Electric Corp.,* 620 F.2d 655, 657–58 (8th Cir. 1980). For the purpose of this opinion, we assume that Martin made out a prima facie case. *See Buckley v. City of Omaha,* 605 F.2d 1078, 1080 (8th Cir. 1979).

On appeal, Martin contends that the trial court erred in finding that the Center had articulated a legitimate reason for her dismissal and in finding that she had not met her burden of proving that the reasons given for her dismissal were pretextual.

■ The Center must meet its burden of producing evidence that demonstrates by a preponderance of the evidence that the Center's "employment decision [was based] on a legitimate consideration, and not an illegitimate one such as race" and must "'articulate some legitimate, nondiscriminatory reason for the employee's'" treatment. *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577–78, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978), *quoting McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824; *Kirby v. Colony Furniture Co.,* 613 F.2d 696, 702–03 (8th Cir. 1980); *see Vaughn v. Westinghouse Electric Corp., supra,* 620 F.2d at 659; *cf. Burdine v. Texas Department of Community Affairs,* 608 F.2d 563, 568 (5th Cir. 1979), *cert. granted,* —— U.S. ——, 100 S.Ct. 3009, 65 L.Ed.2d 1112 (1980) (requiring objective comparative factual data to rebut prima facie case).

■ The trial court found that the Center had met its burden and that Martin did not show these reasons to be pretexts. These findings "shall not be set aside unless clearly erroneous," Fed.R.Civ.P. 52(a). To be such, the record as a whole would have to lead this court to the "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Coleman v. Missouri Pacific Railroad Co.,* 622 F.2d 408 at 409 (8th Cir. 1980). We have reviewed the record and agree with the trial court's conclusion that

> it was impossible for Ms. Martin, despite her earnest endeavors, to fulfill the responsibilities of the position of full charge bookkeeper of the Arkansas Arts Center. The weight of the credible evidence demonstrated that Ms. Martin was not qualified to hold the position and the reasons given for termination were not pretextual. The court does not intend to intimate that Ms. Martin could not perform bookkeeping functions efficiently and well in offices that had different bookkeeping demands. The court believes it was the type of work and multifaceted demands the public made of the Arts Center Business Office that kept Ms. Martin from being able to cope adequately with the job.

*Martin v. Arkansas Arts Center, supra,* 480 F.Supp. at 162.

Furthermore, the record does not substantiate Martin's allegations that, while perhaps she was fired mainly for job performance, race was a factor in the decision. The Center bent over backwards in hiring Martin and then in attempting to train her to become an efficient supervisor in the bookkeeping department, despite her difficulties in learning. Martin, for whatever reason, simply could not handle the intellectual and organizational demands of a supervisory position. The trial court gave full, comprehensive, and sympathetic consideration to Martin's situation, found that the demands of the position were heavier than Martin could bear, and found that race was not a factor.

*Evidentiary rulings*

■ Martin contends that the trial court erred in allowing Don Smith, the Certified

Public Accountant employed by the accounting firm of Peat, Marwick and Mitchell, to give his expert opinion at trial without disclosing the underlying facts on which this opinion was based. Apparently, Martin is objecting to Smith's conclusion that Martin was incapable of performing the duties of the full charge bookkeeper at the Center. We hold that the trial court properly overruled Martin's objection to Smith's testimony.

Rule 705 of the Federal Rules of Evidence provides:

> The expert may testify in terms of opinion or inference and give the reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

The factual basis of Smith's testimony was clearly presented to the trial court during both direct and cross-examination. Smith was a Certified Public Accountant working for a prestigious national accounting firm. He had previously performed the annual examination of the financial statements of the Center. In addition to auditing the Center's books, Smith had made occasional recommendations to the Center concerning its financial operations based upon knowledge acquired during the audits. He was therefore familiar with the Center's financial operations. Smith could have qualified as an expert and could give his opinion of Martin's performance.

The trial court, however, in response to Martin's objection, received Smith's testimony as a lay person. The court did not hold Smith to be an expert. Smith's testimony was properly received and relied upon by the trial court.[4]

■ Martin also contends that the trial court erred in admitting into evidence the memorandum from Kaplan to Wolfe, which detailed Martin's deficiencies. Martin ar-

gues on appeal that the memorandum was hearsay. See Fed.R.Evid. 801(c). At the trial, however, Martin did not object on the grounds of hearsay but rather because the memorandum was not presented to Martin at the time of its composition and because she contended it was a self-serving document. The court denied the objection, holding that the "weight and credibility to be attached to it will be for the court to determine." Martin did not object on the grounds of hearsay.

■ Rule 103(a)(1) of the Federal Rules of Evidence provides:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and * * *
>
> In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]

A reviewing court will not ordinarily consider grounds of objection not presented to the trial court, see Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941), with the exception of "errors seriously affecting the fairness or integrity of judicial proceedings." Anderson v. United States, 417 U.S. 211, 217 n.5, 94 S.Ct. 2253, 2259 n.5, 41 L.Ed.2d 20 (1974). We find no serious or prejudicial error in the trial court's admission into evidence of Kaplan's memorandum.

■ Finally, Martin alleges that the trial court erred in crediting the documentary evidence compiled for Wolfe in the form of Simmons's memorandum and the accountant's review report. Martin contends that the documents are suspect since they were compiled after she had filed a discrimination charge with the Equal Employment Opportunity Commission. This argument, however, goes to the weight and credibility

---

4. Martin also alleges that she was not afforded proper cross-examination of Smith due to non-responsive answers. This allegation is without merit. Smith's testimony on cross-examination comprises eighty-five pages of the transcript, during which Martin explored in depth Smith's relationship with the Center.

of the evidence, not its admissibility. The weight accorded such evidence by the trial court is a finding of fact which will not be set aside unless "clearly erroneous." *See* Fed.R.Civ.P. 52(a). The trial court did not err in crediting the post-discrimination charge documentary evidence compiled for Wolfe.

Affirmed.