JAMES C. HILL, Circuit Judge:
 

 FACTS
 

 Roger Alan Cox, was tried and convicted on a twelve count indictment charging conspiracy against the United States, in violation of 18 U.S.C. § 371 (1976), making false statements against the United States in violation of 18 U.S.C. § 1001 (1976), and concealing and transporting merchandise imported contrary to law, in violation of 18 U.S.C. § 545 (1976). The appellant was sentenced to consecutive five-year sentences on each count. All but two consecutive periods of six months each were suspended, pending a five-year period of probation. The appellant was further ordered to pay costs of his prosecution. Mr. Cox now appeals his conviction.
 

 The appellant is a federally licensed firearms dealer doing business as Law Enforcement Ordinance Company in Athens, Georgia. Mr. Cox supplied police departments throughout the United States with police equipment and firearms. In December of 1971, the appellant met Mr. Ronald J. Martin from Miami, Florida. Mr. Martin had access to a large quantity of firearms available for sale in Guatemala. The appellant was interested in purchasing some of these weapons but needed a financial backer to complete the transaction. The appellant contacted Mr. Edward Louis Faust, a firearms dealer in Sacramento, California. Mr. Faust expressed an interest in purchasing some of the weapons but only upon inspection. Pursuant to their conversation Mr. Faust, Mr. Martin and the appellant flew to Guatemala to inspect the guns. Upon inspection, the appellant purchased over five thousand firearms. Among these weapons were approximately one hundred Russian type Degtyarev DP 7.62 millimeter subma-chine guns. Although the appellant recognized these weapons as being Russian, he noted that they appeared slightly different from the Russian submachine guns he had
 
 *1296
 
 been previously familiar with. In discussing the origin of the guns, Mr. Martin commented that as far as he knew the guns were probably made in Guatemala or else they were possibly among some of the weapons sent by the United States to Guatemala back in 1954.
 

 The appellant filled out the appropriate forms for importing foreign made guns. Question number eight on the form requested the place of manufacture. The appellant responded to this question with “Guatemalan Model 1938.” The appellant contends he was not sure of where the guns were originally made and therefore, he chose to put down on the form the place from which the guns were being shipped — Guatemala.
 

 I.
 

 The indictment in this case charged that appellant knowingly falsified documents about the origin of the Russian sub-machine guns, when in truth and fact he knew they were made in Russia. The appellant masterfully seized upon the language in the latter part of this sentence. He went to great lengths to demonstrate that the Government did not prove the appellant
 
 knew
 
 the guns were of
 
 Russian origin.
 
 While the evidence would support a finding that Mr. Cox knew the guns were made in Russia, it was not necessary that the Government prove this point. The crime charged was falsifying the forms for the importation of foreign made weapons into the United States. Therefore, the question was not whether Mr. Cox knew the guns were made in Russia, but rather if he knew they were
 
 not
 
 made in Guatemala.
 

 Viewing the evidence in a light most favorable to the Government,
 
 Glasser v. United States,
 
 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942);
 
 United States v. Davis,
 
 679 F.2d 845 (11th Cir.1982), the Government sufficiently proved that the appellant knew the guns were not made in Guatemala. Accordingly, when the appellant filled out the importation forms, he knowingly and falsely stated that the weapons were made in Guatemala. Although the appellant raises a clever defense by attempting to convince the jury that because he did not know the guns were of Russian origin he was not guilty, this defense was only a smoke screen which the jury apparently saw through. Whether the guns were made in Russia, or for that matter, in Canada or Africa would not change the fact that the appellant knew they were
 
 not
 
 manufactured in Guatemala.
 

 II.
 

 The appellant also contends that the trial court’s refusal to admit certain expert testimony was error. The appellant called a forensic firearms expert to testify about the CIA’s activities involving the remanufacture of certain weapons and their shipment to Guatemala in 1954.
 

 This expert was called to demonstrate to the jury that the CIA had taken Korean battlefield scrap Russian machine guns and remanufactured them. These weapons were then shipped to Guatemala.
 

 The information offered by this witness regarding the activities of the CIA was not probative of the two purposes for which it was urged. The appellant initially offered this testimony as evidence of the appellant’s subjective belief as to the origin of the guns. The appellant was attempting to prove that becáuse the expert had concluded the guns in question may have been among the guns which were remanufac-tured in the United States in 1954, it was reasonable for the appellant to conclude the same thing. Although this may have been effective evidence if the appellant could demonstrate that he relied on the expert’s opinion when he purchased the guns, the appellant had never known of this expert or his testimony until the trial. Because the appellant did not know of the expert’s opinion when he purchased the guns and he, therefore, did not rely on this information, admission of this testimony would have only misled or confused the jury.
 
 See United States v. White,
 
 216 F.2d 1 (5th Cir.1954).
 

 The second theory upon which the appellant urged admission of this testimony was to impeach the Government’s witnesses whose testimony demonstrated that the guns were made in Russia. Unfortunately,
 
 *1297
 
 the expert’s testimony in this area only supported the Government’s theory that the guns were of Russian origin.
 

 Moreover, the witness claimed he had first hand knowledge of examining some Russian submachine guns back in 1954. However, his knowledge that the CIA had purposefully taken scrap pieces and remanufactured them into machine guns was based on hearsay. Although certain hearsay testimony by experts is permitted, it must be based on the type of evidence “reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.” Federal Rule of Evidence § 703. The testimony being offered by this witness was of a historical nature; it was not based upon “knowledge, skill, experience, training or education” gathered in a scientific or technical manner. Federal Rule of Evidence § 702. Because this testimony was primarily based on hearsay and was not relied upon by the appellant, we find the exclusion of this testimony well within the trial judge’s discretion.
 

 The appellant also raises objections to several portions of the jury instructions given by the trial court. Appellant specifically objected to the court’s instructions which, according to the appellant, removed the issue of objective falsity or falsity in fact. Throughout the charge the court did define objective falsity as “[a] statement is false if it was untrue when made and was then known to be untrue by the person making it or causing it to be made.” Record on Appeal at 296. Appellant concedes that the judge defined objective falsity, but contends that other charges given in essence obliterated the objective falsity instruction. The trial judge did instruct the jury as to the relevance of the appellants subjective belief when he signed the form. The judge in instructing the jury stated that
 

 [s]o we’re looking at what Roger Cox believed when he signed the form. We’re not looking at what anyone else believed; what Roger Cox believed from all the facts and circumstances. You could think of it as if you were Roger Cox, having his education, his experience, doing all that you heard the evidence shows that he did, received all the information that the evidence shows he received and was exposed to and when you sat down to fill out the form in question, would you believe that the firearm in question was made or in this case manufactured in Guatemala. Just put yourself in his shoes.
 

 Record on Appeal at 302.
 

 This instruction was given by the court in an effort to explain what the element of “knowingly” meant. The element of knowingly requires the jury to attempt to assess whether the defendant subjectively knew that the information he was providing was false. As to the element of knowingly, it is reasonable for the court to inform the jury that they must attempt to view this element by looking at whether the evidence showed that the defendant knew he filled out the form falsely.
 

 It appears from the record the court went to great lengths to explain the subjective standard of “knowingly” so as to demonstrate to the jury the difference between this element and the element of “falsity in fact.” The court had the difficult task of informing the jury that they must first find that the weapons were not made in Guatemala. This is the falsity in fact element which requires an objective standard. Secondly, the jury had to find that the defendant, with knowledge, falsified the documents in question. This element requires a subjective standard.
 

 The appellant’s argument confuses the subjective standard given by the court, for the element of knowingly, with the objective element of falsity in fact. The record does not indicate this happened. Quite the contrary, the record clearly delineates the element of falsity in fact with the definition of that term and the element of “knowingly.” Accordingly, we find no error in this part of the court’s instruction.
 

 The appellant further objects to the charge the court gave on specific intent. Appellant suggests that the court gave no instruction as to Counts II—VIII on the
 
 *1298
 
 necessary element of specific intent. The court simply declined to use the
 
 term
 
 specific intent, and instead defined and referred to the need for the jury to find that the defendant
 
 knowingly and willingly
 
 made a false statement relative to a material matter. The charge to the jury need not conform to the language of the defendant’s request, as long as it clearly and accurately states the proposition.
 
 United States v. Baker,
 
 626 F.2d 512, 516 (5th Cir.1980). The elements of specific intent are knowingly and willfully.
 
 See United States v. Lange,
 
 528 F.2d 1280 (5th Cir.1976);
 
 United States v. Smith,
 
 523 F.2d 771 (5th Cir.1975).
 

 Because the court clearly delineated on several occasions that an essential element to convict the defendant was whether he knowingly and willfully falsified the documents we find no error in the trial court’s explanation of specific intent.
 

 The appellant further contends that the trial court erred by failing to give an instruction on ignorance of the law. The trial court refused to give this instruction because the judge concluded that no evidence was presented to warrant this type of instruction. The appellant maintained throughout his defense that he believed the guns were made in Guatemala. His defense was
 
 not
 
 that he thought the form only required place of shipment, rather than place of manufacture. It is only upon appeal that this assertion is made. An instruction on ignorance of the law would be warranted only if the appellant contended he was unaware that he was obliged to put down the country of manufacture. The appellant did not contend this, and for good reason, since the form specifically requests at question number eight “name and address of manufacturer.” It would have been difficult for the appellant to argue ignorance of the law under these circumstances. The trial court properly excluded an instruction on ignorance of the law.
 

 Finally, the appellant objected to the following instruction given by the trial court: “the Judge, under the law, is permitted to impose anything from a term of probation or a fine up to the maximum term of imprisonment that Congress has set.” Record on Appeal at 288. Appellant points to several cases where the trial court was supported by the appellate court for
 
 not
 
 commenting on the issue of possible punishment. This court does not approve of informing a jury of a minimum or maximum punishment.
 
 See Pope v. United States,
 
 298 F.2d 507 (5th Cir.1962).
 

 However, in this case, the judge was not attempting to let the jury know what type of punishment might be ordered. The judge properly informed the jury that punishment should be of no concern to the jury. The jury was informed, generally speaking, about the procedures involved when a judge goes about sentencing. This information was given to the jury because they had asked questions about the potential punishment and how it is decided. The instruction was not given as to the specific defendant, Mr. Cox, but rather, was given as general information about sentencing procedure.
 

 In
 
 United States v. Stanley,
 
 433 F.2d 637 (5th Cir.1970), an objection was raised to the court’s instruction stating: “I charge you that you are not concerned when you make a determination of guilt or innocence with any punishment that may be imposed, whether it be probation or whether it be a fine or whether it be a penitentiary sentence.”
 
 Id.
 
 at 639. The court concluded that this instruction was not erroneous. The court noted that this type of instruction became necessary because of a comment made by defense counsel referring to the potential maximum sentence.
 

 In the instant case the judge’s reference to sentencing concerned the range of potential punishment, without referring to a specific maximum other than that delineated by Congress. The judge in no way intimated what punishment he might be inclined to give. He also consistently informed the jury that potential punishment was
 
 not
 
 their concern; they were only to look for the truth and provide a verdict according to what the evidence demonstrated. Although this court prefers no reference to sentenc
 
 *1299
 
 ing whatsoever, we find no error in the trial court’s instruction.
 

 III.
 

 The appellant also contends that Counts XI and XII, charging the concealment and facilitation of the transport of illegally imported goods in violation of 18 U.S.C. § 545 (1976), are not valid due to the exclusionary rule set forth in 26 U.S.C. § 5848 (1976). The exclusionary rule states:
 

 (a) General rule. — No information or evidence obtained from an application, registration, or records required to be submitted or retained by a natural person in order to comply with any provision of this chapter or regulations issued thereunder, shall except as provided in subsection (b) of this section, be used, directly or indirectly, as evidence against that person in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration, or the compiling of the records containing the information or evidence.
 

 (b) Furnishing false information.— Subsection (a) of this section shall not preclude the use of any such information or evidence in a prosecution or other action under any applicable provision of law with respect to the furnishing of false information.
 

 The appellant contends that the substance of the Counts XI and XII is based on the information obtained in his importation documents and therefore, is subject to the exclusionary rule which should bar prosecution on those counts. The purpose of this exclusionary rule is to avoid the potential self-incrimination problems inherent in any registration scheme. Congress has granted use immunity regarding the information contained in registration documents.
 
 See United States v. Freed,
 
 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971);
 
 Haynes v. United States,
 
 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968).
 

 However, the granting of this immunity does not exclude the prosecution of any and all crimes as evidenced by subsection (b). The Government proved that appellant transported two of these weapons through customs to his office in Athens, Georgia. The statute for the importation violation also requires proof that the merchandise was transported “contrary to law.” The Government used the form, falsely filled out by the appellant, to demonstrate that the guns had been imported contrary to law. The Government was not using any information on the form as against the appellant whereby any fifth amendment, self incrimination problems could develop. The Government merely used the form to demonstrate that the guns were brought into this country fraudulently, which is contrary to law. Further, subsection (b) precludes the application of subsection (a) for prosecutions “with respect to” the furnishing of false information. The importation violation is clearly “with respect to” a prosecution for furnishing false information. Accordingly, Counts XI and XII are not multi-plicious and do not violate the exclusionary rule set forth in § 5848.
 

 IV.
 

 The appellant on February 4, 1982, filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court, to discharge his debts. On April 8,1982, the trial court ordered the appellant to deposit the entire amount of the costs of prosecution, or to post a bond in lieu of, pending his appeal. Appellant subsequently filed a bond for the costs of his prosecution. Appellant now appeals the trial court’s order to pay costs. Appellant’s appeal for having to post bond is moot before this court as appellant chose to post the bond rather than refusing to pay while petitioning for a writ of mandamus. Because the bond has been posted, the only remaining issue is whether the costs of the prosecution are dischargeable in bankruptcy. We conclude that this question should be decided by the Bankruptcy Court where this issue is presently pending.
 

 Because we find no errors in the trial court’s decisions, we
 

 AFFIRM