ARKANSAS STATE HIGHWAY COMMISSION *v.*
Harold D. SCHELL, and Bertha E. SCHELL, His Wife

CA 83-466                                     683 S.W.2d 618

Court of Appeals of Arkansas
Division I
Opinion delivered January 30, 1985

*Thomas B. Keys,* and *Charles Johnson,* for appellant.

*Pearson, Woodruff & Evans,* by: *C. Thomas Pearson, Jr.,* for appellee.

DONALD L. CORBIN, Judge. Appellant, Arkansas State Highway Commission, appeals from a judgment entered on a jury verdict assessing compensation in the amount of $50,000.00 for the taking of the lands of appellants, Harold D. and Bertha E. Schell. Appellant contends that the trial court erred in refusing to adopt its statement of the evidence, in refusing to grant its motion for a new trial and in refusing to allow appellant to inquire into the basis of the opinion of witness Neil Palmer. We reverse and remand.

Appellant condemned part of a forty-acre tract of appellees' land for construction of the Highway 71 Relocation project. Appellees raised poultry in four poultry houses located on the property. The area of taking acquired by appellant consisted of 4.44 acres and divided appellees' forty-acre tract into two parts, leaving the west residual with 27.58 acres and the east residual with 7.98 acres. Due to the construction of the controlled access facility, appellees' east residual was landlocked following the taking. The record reflects that after construction of the new highway, appellees' easternmost poultry house would be approximately 250 to 270 feet from the nearest traffic lane of the highway.

Mark Risk, an expert witness who testified at the trial for appellees, determined the amount of damages from the taking to be $61,000.00. Appellee Bertha E. Schell testified that the damages from the taking amounted to $75,000.00. Larry Dupree and Neil Palmer, expert witnesses for

appellant, testified that the amount of compensation owed appellees was $20,600.00 and $25,800.00, respectively.

As a result of a mechanical failure of the court reporter's recording equipment, the parties attempted to reconstruct the record pursuant to Ark. R. App. P. 6. Appellant's first assignment of error concerns the trial court's refusal to adopt appellant's statement of the evidence and proceedings and its denial of appellant's motion for a new trial. Since there is little or no likelihood of another mechanical failure of the recording equipment upon the new trial of this cause, we do not address this issue.

The issue of concern to this Court and the one which we hold constitutes reversible error is the refusal of the trial court to allow appellant to inquire into the basis of the opinion of witness Neil Palmer. Neil Palmer was a real estate appraiser for appellant and was called by appellees as their second witness.

The record reflects that Neil Palmer was asked on direct examination by counsel for appellees to tell the jury how he went about making his appraisal. He was further questioned as to whether he considered any severance damages to the property. Neil Palmer responded by stating that he was involved in a study and determined that severance damages were improper. During his questioning of the witness, counsel for appellant attempted to go into the basis of Neil Palmer's opinion that no severance damages were assigned by him to the fourth poultry house by virtue of its proximity to the highway. Counsel for appellees objected and the following exchange took place:

> MR. PEARSON (counsel for appellees): Your Honor, I, — I object. Ugh, — who he talked to is totally irrelevant, and he can't testify as to what they said. This, I believe, is for the purpose of trying to prejudice the jury without going into the parties' qualifications.

> THE COURT: Well, I think you're right, Mr. Pearson. I'll sustain the objection. He may testify that he talked to people he considered knowledgeable, and that's it.

MR. PUTMAN (counsel for appellant): Your Honor, aren't we going to be allowed to show the nature and depth and extent of his investigation?

THE COURT: Ugh, — No, because, I think you'd be, — ugh, — I think you'd be lending weight to their opinion. Ugh, — he may testify that he made an investigation —

Counsel for appellant then made the following proffer:

MR. PUTMAN: Let the record show that if he were allowed to answer, the witness would testify that the nature of his study about whether or not there were any severance damages to the poultry house number four, or what's been referred to as poultry house number four; he consulted with a poultry expert at the University of Arkansas in the College of Agriculture; that he consulted with people who were involved in the poultry industry who have, I believe, the designation of integrators, who organize and present overall poultry programs, and place poultry in certain particular locations . . . . And, also, he talked to poultry raisers; the people in the field, who raise both chickens and turkeys; that he went on site, and examined the poultry houses in which both chickens and turkeys were being raised at distances ranging from fifteen feet to two hundred and over from the highway, and determined in each case that there were no deleterious effects, and further, had the benefit of a particular study conducted by the University of South Carolina in a field called poultry hysteria, dealing specifically with the effects of noise and other such phenomena on the raising of poultry, and from all of these, determined that the proximity of the highway would have no effect whatsoever on the raising of the poultry in the house in question.

THE COURT: Well, the Court's ruling is that the witness would be permitted to testify that he talked to people he considered to be experts in the field, — ugh, — including poultry raisers and, — ugh, — including,

— ugh, — people, — ugh, — who are considered expert in the area; but, if you go any further than that, you are lending weight to his conclusion. You're bringing in testimony of experts when they are not here.

MR. PUTMAN: Well, I think it's true what Your Honor says. It does lend weight to his testimony; but, I think it's the type of weight which the jury is entitled to know about.

THE COURT: I don't think so.

The questions that were asked of Neil Palmer were proper and his answers were admissible. It is well settled that an expert may base his opinion on facts learned from others despite their being hearsay. *Dixon* v. *Ledbetter*, 262 Ark. 758, 561 S.W.2d 294 (1978); *Ark. State Hwy. Comm'n* v. *Bradford*, 252 Ark. 1037, 482 S.W.2d 107 (1972); *Ark. State Hwy. Comm'n.* v. *Russell*, 240 Ark. 21, 398 S.W.2d 201 (1966). When an expert's testimony is based on hearsay, the lack of personal knowledge on the part of the expert does not mandate the exclusion of the opinion but, rather presents a jury question as to the weight which should be assigned the opinion. Stated another way, Neil Palmer's method of gathering the data he utilized in forming his opinion should have been explained in order for the jury to weigh his opinion. The rule for admission of expert testimony does not depend on the relative certainty of the subject matter of testimony, but rather on the assistance given by the expert testimony to the trier of fact in understanding the evidence or determining a fact in issue. Ark. Unif. R. Evid. 702. Moreover, the relative weakness or strength of the factual underpinning of the expert's opinion goes to the weight and credibility, rather than admissibility. *Polk* v. *Ford Motor Co.*, 529 F.2d 259 (8th Cir.), *cert. denied*, 426 U.S. 907 (1976).

Ark. Unif. R. Evid. 703 provides:

Basis of opinion testimony by experts. — The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type

> reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Under this rule an expert must be allowed to disclose to the trier of fact the basis facts for his opinion, as otherwise the opinion is left unsupported in midair with little if any means for evaluating its correctness. E. Cleary, *McCormick on Evidence* (3d ed. 1984). § 324.2, p. 910. Underlying Rule 703 is the idea that an expert is likely to understand better than a court the quality and nature of data essential to support an opinion in his own field. This rule does not, however, abdicate judicial responsibility to the expert for it leaves room for rejection of testimony if reliance on the facts or data is unreasonable. The rule directs the trial judge to accord deference to the expert's explanation of what is reasonable, but it does not require the trial judge to accept what amounts to wishful thinking, guesswork, or speculation. The reasonable reliance standard set by Rule 703 obviously. points toward broad admissibility of expert testimony. D. Louisell and C. Mueller, *Federal Evidence* (1979), § 389, p. 658. Once the evidence is admitted, adequate safeguards remain to deal with this evidence such as cross-examination of the expert.

Ark. Unif. R. Evid. 705 has simplified the manner in which expert testimony may be presented by eliminating mandatory preliminary disclosure of the facts or data underlying an expert's opinion. Rule 705 provides:

> Disclosure of facts or data underlying expert opinion. — The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

Requiring the jury to be informed of the basis of the expert's opinion makes sense. The opinion would be irrelevant if grounded on facts found by the trier of fact not to exist in the particular case; but obviously the trier of fact cannot assess

the validity of the assumed facts without knowing what they are. J. Weinstein, *Weinstein's Evidence Commentary on Rules of Evidence for the United States Courts and State Courts* (Vol. 3 1982), § 705[1], pp. 705-4, 705-5. Emphasis is placed upon the function of cross-examination by this rule and the burden is put upon the opponent of the calling party to demonstrate that the conclusion of the expert lacks adequate support in order for the testimony to be subject to being stricken by the trial court. D. Louisell and C. Mueller, *supra*, § 400, p. 709. See, *Martin v. Arkansas Arts Center*, 627 F.2d 876 (8th Cir. 1980); *United States v. 1,014.16 Acres of Land*, 558 F. Supp. 1238 (W.D. Mo. 1983); *Rounsaville v. Ark. State Hwy. Comm'n*, 258 Ark. 642, 527 S.W.2d 922 (1975); Annot., 49 A.L.R. Fed. 363 (1980); Annot., 12 A.L.R. 3d 1064 (1967). Rule 705 does not limit the disclosure of facts or data underlying an expert's opinion to cross-examination. This rule merely removes any legal requirement to develop in the beginning the basis for an expert's conclusions. Instead, he may state his conclusions straight away. The pressures of orderly presentation will often lead to divulgence of at least some of the supporting data. J. Weinstein, *supra*, § 705[1], p. 705-7. An expert may be asked on direct examination to state the grounds of his opinion, i.e., the general data which form the basis of his judgment upon specific data observed by him. J. Wigmore, *Evidence in Trials at Common Law* (Vol. 2, 1979), § 562, p. 759.

From our review of the record, we believe that the court's erroneous ruling on the admissibility of expert Neil Palmer's basis for his opinion unduly circumscribed appellant in its examination of the witness. Further, we believe that there is a reasonable likelihood that the limitation imposed by the court could have affected the jury's impression as to the basis of the expert testimony and the credibility of the witness. We cannot conclude that the court's erroneous limitation was harmless, and accordingly, we will remand for a new trial.

Reversed and remanded.

COOPER, J., agrees.

MAYFIELD, J., concurs.

MELVIN MAYFIELD, Judge, concurring. Uniform Evidence Rule 703 allows an expert witness to base an opinion or inference, under proper circumstances, upon facts or data not admissible in evidence, and I have no problem with the statement from E. Cleary, *McCormick on Evidence* § 324.2 (3d ed. 1984), relied upon in the majority opinion, that an expert must be allowed to disclose the basis for his opinion. However, I want to emphasize the following statement found in the same section of *McCormick on Evidence:*

> It does not mean that the expert becomes the sole judge of the admissibility of the basis facts: they must still be of a type reasonably relied upon by experts in the field, and they are subject to such general evidentiary principles as exclusion for prejudice or irrelevancy.

In connection with the above statement, I also want to emphasize the following statement from Saltzburg & Redden, *Federal Rules of Evidence Manual* 467 (3d ed. 1982):

> Evidence not otherwise admissible is not admitted under this Rule for its truth; it is admitted to explain the basis of the expert opinion. A limiting instruction often should be required to explain this to the jury. However, we would emphasize that Rule 403 could be used to keep such evidence out where its admission might be unfair to an opposing party. One of the things that a Court might consider in assessing the reasonableness of reliance by an expert on facts not in evidence is whether an opposing party could effectively examine the expert concerning the reasonableness, reliability, significance, strengths and weaknesses of the facts not in evidence.

Another quotation that I think worth special notice is found in 3 Louisell & Mueller, *Federal Evidence* § 389 at 663 (1979):

> While Rule 703 permits an expert witness to take into account matters which are unadmitted and inadmissible, it does not follow that such a witness may simply report such matters to the trier of fact: The Rule was not

designed to enable a witness to summarize and reiterate all manner of inadmissible evidence, but rather to pave the way for whatever assistance may be provided by expertise in analyzing, explaining, and interpreting such data in the whole context of the case.

Some cases that are cited by the above authorities in support of the statements I have quoted are: *United States* v. *Brown,* 548 F.2d 1194 (5th Cir. 1977); *United States* v. *Cox,* 696 F.2d 1294 (11th Cir. 1983); and *Northern Nat. Gas* v. *Beech Aircraft,* 202 Neb. 300, 275 N.W.2d 77 (1979).

In *Brown* the defendant was charged with counseling, procuring and advising the preparation and filing of fraudulent income tax returns. An IRS agent was allowed to testify that between 90% and 95% of about 160 returns prepared by the defendant contained overstated itemized deductions. The opinion stated that the agent must have obtained this information through conversations with each of the taxpayers audited. The court pointed out that the defendant had no opportunity to cross-examine these tax-payers or to even adequately cross-examine the agent since she testified from memory. "Thus," the opinion states, "the jury had no way to examine the trustworthiness of [the agent's] testimony." In a footnote the opinion noted that the agent's testimony was not admissible under Rule 703 because she was not testifying as an expert but "to establish as a fact — not opinion — that defendant had committed similar acts in the past."

In *Cox* the court said: "Although certain hearsay testimony by experts is permitted, it must be based on the type of evidence 'reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.' . . . The testimony being offered by this witness was of a historical nature." And in the *Northern Nat. Gas* case the trial court declared a recess when it became apparent that there was a problem with the admissibility of the expert's testimony. After an offer of proof in chambers, the court held that the data sought to be introduced by the expert's testimony went far beyond data reasonably relied upon by experts in his field. In affirming the trial court's action, the appellate court said:

While under our Rules of Evidence the expert may not be required to disclose the underlying facts or data before rendering his opinion, the trial court on its own motion can require such disclosure. . . . In this case the trial court made such a requirement, and upon hearing what the expert proposed to testify, concluded that neither the record nor the apparent qualifications of the expert would justify such an opinion. A trial court is given large discretion in determining whether or not the witness' qualification to state his opinion has been established, and this discretion will not ordinarily be disturbed on appeal unless there is an abuse of that discretion.

I have called attention to the above because the question involved in this case has not been previously considered by us and I have found very little discussion of the matter. It is with reluctance that I agree to reverse this case; however, I think in fairness to all involved, an opportunity should be given for a new trial after court and counsel have been able to carefully consider the matter. It should be noted that the majority opinion is based on the record we have before us. In the event of a new trial, it seems to me that a proffer of this evidence by question and answer, out of the presence of the jury, might be helpful. In that way the real purpose of the evidence sought to be introduced could be determined and, if admissible, any limitations upon its use could be set in the calm of the court's chambers instead of the pressure of the courtroom.

I concur in the reversal and remand of this case.