**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Errol Bernard RESNICK, Defendant-Appellant.**

**No. 73-1316.**

United States Court of Appeals, Fifth Circuit.

Jan. 30, 1974.

Barry L. Garber, Miami, Fla. (court-appointed), for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Robert A. Leventhal, Harrison T. Slaughter, Jr., Asst. U. S. Attys., Orlando, Fla., for plaintiff-appellee.

Before BELL, DYER and CLARK, Circuit Judges.

DYER, Circuit Judge:

Resnick was convicted for selling firearms to persons whom he knew or had reasonable cause to believe were non-residents of the state of his place of business, a violation of 18 U.S.C.A. § 922(b)(3), and for failing to keep the appropriate firearms transaction records required by 18 U.S.C.A. § 922(b)(5), § 922(m), and § 923(g). The only points on appeal that merit discussion are that testimony by a government witness suggesting Resnick's involvement in unrelated criminal activity requires a reversal, and that the firearms transaction record-keeping provisions are violative of the fifth amendment privilege against self-incrimination. We affirm.

Resnick was the president-owner of E.B.R. Enterprises, a licensed dealer in firearms, which operated Triggermart, a gun shop in Orlando, Florida. On January 25, 1971, two Georgia residents, Miles and Walker, decided to purchase two pistols at Triggermart. Because federal law prohibits the sale of firearms to non-residents,[1] when the men tendered out-of-state checks, Resnick informed them that only in-state checks were acceptable. It was then agreed that the purchasers would arrange to have a check sent to Triggermart from an auto dealership in Cocoa, Florida, in which they were stockholders and officers. The manager of the dealership later mailed the check according to the instructions given by Miles and Walker, but the guns were never inventoried to the corporation. Rather, Resnick delivered the pistols to the two men after paying the purchase price from his own pocket.[2] He later placed the check from the dealership in Triggermart's cash register and withdrew the money.

After the financial details had been settled, Resnick inquired of those present in the store if any of the Florida residents would be willing to "sign out" the guns.[3] A Triggermart employee, Nancy Gray, consented and filled

1. 18 U.S.C.A. § 922(b)(3) provides in relevant part:

> It shall be unlawful for any . . . licensed dealer . . . to sell or deliver—
> any firearm to any person who the licensee knows or has reasonable cause to believe does not reside in (or if the person is a corporation or other business entity, does not maintain a place of business in) the State in which the licensee's place of business is located . . . .

2. Although the firearms could lawfully have been sold to the Florida corporation, the evidence is clear that the sale was not to the corporation, but to the men personally.

3. 18 U.S.C.A. § 922(b)(5) provides in relevant part:

> It shall be unlawful for any . . . licensed dealer . . . to sell or deliver—
> any firearm or ammunition to any person unless the licensee notes in his records, required to be kept pursuant to section 923 of this chapter, the name, age, and place of residence of such person if the person is an individual, or the identity and principal and local places of business of such person if the person is a corporation or other business entity.

18 U.S.C.A. § 923(g) requires each licensed dealer to "maintain such records of . . . sale, or other disposition, of firearms and ammunition at such place, for such period, and in such form as the Secretary may by regulations prescribe." 26 C.F.R. § 178.124 requires a licensed dealer to maintain a firearms transaction record, Form 4473, for each firearm sold or otherwise disposed of.

out the firearms transaction records indicating that she was the transferee of the two pistols. Miles and Walker filled out no forms, apparently unaware of the circumvention of the state residency requirement.

The second transaction for which Resnick was prosecuted was initiated on March 18, 1971. On that date, an undercover agent of the Alcohol, Tobacco and Firearms Division of the Treasury Department, Lloyd Michael Steele, entered Triggermart and indicated to Resnick that he wanted to purchase two pistols, but did not want to sign for them.[4] Resnick responded that the problem could be solved by purchasing a hunting and fishing license which could be used as "identification" for the firearms purchase. Agent Steele gave his name as Michael L. Steed, but told Resnick that the name was fictitious. Not only did Resnick respond that the use of a phony name made no difference to him, but he also suggested that the address Agent Steele gave, 115 Gore Avenue, Daytona Beach, Florida—which Resnick also knew to be a sham—be changed to 115 Gore Avenue, Orlando. The bogus hunting and fishing license was then used as identification for the purchase of two pistols on that day and for the purchase of another pistol on April 7, 1971.[5]

Resnick's first claim of error stems from the following testimony elicited by the prosecution during direct examination of Agent Steele:

Q. Now, sir, after you purchased the weapons, what did you do then?

A. We had some conversation. He has a coffee vendor in there. I think I asked him if he had some coffee, and we were drinking coffee, and we had some conversation.

And he asked me could I handle any hot guns; and I said, "Most likely. All the guns I handle are hot, anyhow."

Well, he says, "It does not make any difference to me." And—

Q. And then what did you say after he said it did not make any difference to him?

A. That was the end of that part of the conversation.

Q. What happened after that conversation?

A. After that conversation, he had mentioned something about an AK 180, I think it is, and I asked him if that was the type of weapon—it had a selector switch on it that did not work, that did not change it from automatic to full automatic—from a semi-automatic to a fully automatic—and he stated, yes, it was all that he had to do was remove the spring to make it fully automatic.

And I asked him would he show me how to do this.

And he said, yes, which he did show me that night.

Following this exchange, defense counsel moved for a mistrial on the ground that Resnick had been prejudiced by the introduction of evidence of unrelated criminal activity, namely by the implication that the defendant dealt in stolen guns and participated in the unlawful alteration of semi-automatic weapons to fully automatic ones. The trial judge properly denied the motion for a mistrial, and stated that he would instruct the jury to disregard the tainted series of questions and answers. Conner v. United States, 5 Cir. 1963, 322 F.2d 647, cert. denied, 1964, 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 178.

4. 18 U.S.C.A. § 922(m) provides:

It shall be unlawful for any . . . licensed dealer . . . knowingly to make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain, any record which he is required to keep pursuant to section 923 of this chapter or regulations promulgated thereunder.

5. In early May of 1971, Resnick instructed Nancy Gray to destroy the firearms transaction records which Agent Steele had completed and to make out replacements. The only alteration was to be that the identification used was the number of a blank Florida driver's license supplied by Resnick.

For reasons entirely unknown to us, the district court did not give the promised curative instructions, and defense counsel made no further reference to the matter. In fact, at the post instruction conference for objections to the charge as given, Resnick's attorney stated that he had no objection. We need not decide whether defense counsel's failure to call the district court's attention to the omission of the promised instructions makes applicable the plain error rule of F.R.Crim.P. 52(b), since the error, if any, is harmless.

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and judgment should stand . . . .

Kotteakos v. United States, 1946, 328 U. S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557; F.R.Crim.P. 52(a). In the circumstances of this case, we are convinced that the substantial rights of Resnick were not affected.

> [W]e have carefully canvassed the entire record and transcript, and are convinced that no prejudice resulted in any wise affecting the verdict of the jury. The evidence of defendant's guilt is strong, clear and convincing beyond question.

United States v. Christian, 8 Cir. 1970, 427 F.2d 1299, 1303, cert. denied, 400 U.S. 909, 91 S.Ct. 153, 27 L.Ed.2d 148. *Cf.* United States v. Ratner, 5 Cir. 1972, 464 F.2d 169, 172–173.

The second issue that we must determine is whether the record-keeping provisions of the federal firearms laws are violative of the fifth amendment privilege against self-incrimination. In support of that position, Resnick relies on Leary v. United States, 1969, 395 U. S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57; Marchetti v. United States, 1968, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889; Grosso v. United States, 1968, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906, and Haynes v. United States, 1968, 390 U.S. 85, 88 S. Ct. 722, 19 L.Ed.2d 923. Such reliance is misplaced, however, since the challenged laws *sub judice* are not directed at a highly selective group inherently suspect of criminal acts, as was the situation in *Marchetti* and its progeny, *see e. g.* United States v. Walden, 4 Cir. 1969, 411 F.2d 1109, 1111, cert. denied, 396 U.S. 931, 90 S.Ct. 271, 24 L.Ed.2d 230. Rather the statutes regulate an essentially noncriminal activity, the sale of firearms. Such regulation is permissible under the "required records" doctrine established by decisions such as Shapiro v. United States, 1948, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787, and United States v. Sullivan, 1927, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037, and recently reaffirmed by the Supreme Court.

> [T]here is some possibility of prosecution—often a very real one—for criminal offenses disclosed by or deriving from the information that the law compels a person to supply. Information revealed by these reports could well be "a link in the chain" of evidence leading to prosecution and conviction. But under our holdings the mere possibility of incrimination is insufficient to defeat the strong policies in favor of a disclosure . . . .

California v. Byers, 1971, 402 U.S. 424, 428, 91 S.Ct. 1535, 1538, 29 L.Ed.2d 9. We conclude, therefore, that Resnick's fifth amendment attack on the firearms transaction record-keeping provisions must also fail.

We have fully considered the other points raised on appeal and find them to be without merit.

Affirmed.