No. 82-166

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

GARRY HENRICKS,

Defendant and Appellant.

---

Appeal from:  District Court of the Second Judicial District,
In and for the County of Silver Bow
Honorable Mark Sullivan, Judge presiding

Counsel of Record:

For Appellant:

John G. Winston argued, Butte, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert M. McCarthy, County Attorney, Butte, Montana
Patrick Fleming argued and Ross Richardson argued,
Deputy County Attorneys, Butte, Montana

---

Submitted: September 17, 1982

Decided: November 3, 1982

Filed: NOV 3 - 1982

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal is from the Second Judicial District in and for the County of Silver Bow. The defendant, Garry Henricks, was convicted on the charge of negligent homicide. From that conviction he appeals.

On September 12, 1981, at approximately 11:30 p.m., the Henricks vehicle, occupied by Garry and Lorraine Henricks, struck and killed a pedestrian. The impact shattered the windshield and sprayed glass particles through the interior. Prior to the accident, Garry and Lorraine had been drinking heavily. At about 11:00 p.m., the parties left the Scandia Bar with another couple, Paul and Raelene Collins. The two couples took their own cars and were to meet at a restaurant. However, the Henricks never showed up. Raelene Collins testified that as they were walking into the restaurant, the Henricks drove by. She testified that Garry was driving at that time.

Garry Henricks admitted that he was driving when they left the bar. He testified that he was driving home but stopped two or three blocks short. Lorraine had wanted to go back to Jerry's Corner Bar to find her shoes and purse. Garry testified that Lorraine then started driving and he began to doze. He does not remember very many details of the accident but does remember hearing a thump or thud as the car hit the pedestrian.

Lorraine's version differs. She testified that she does not remember much of the evening because she has blackout spells when she drinks excessively. However, she does remember leaving the Scandia Bar and Garry was driving. The next thing she remembers is the car striking something, and at that time, Garry was driving. There were several witnesses to the accident, yet none could positively identify the driver.

After the accident Garry and Lorraine agreed to "get rid of the car" since they both had been drinking and they didn't have insurance. They drove back to the Scandia Bar. The bar-

tender at the Scandia testified that Lorraine came in and appeared panicky and desperate. She was asking for Paul Collins. When she could not find Paul she asked Kenny Moore to go outside and talk with her. Outside, Lorraine and Kenny Moore met Paul and Raelene Collins as they were driving up. The Collinses followed them into an alley where the hit-and-run car was parked. Garry then drove their car in search of a place to abandon it. The Collinses followed. The car was abandoned and the Collinses gave them a ride to another couple's house. The next morning, Lorraine reported the car as stolen. Later that day the police found the hit-and-run vehicle.

Blood stains were found on the driver's side floor mat and on the dashboard to the left of the steering wheel. The sample on the dashboard matched Garry's blood type and the sample on the floor matched Lorraine's. Lorraine was barefoot the evening of the accident, however, it was not until the next morning she noticed that she had cut her foot; apparently from the shattered windshield glass of the hit-and-run vehicle.

On October 9, Lorraine contacted police and admitted being the driver of the vehicle. The next morning she made a formal statement in which she again admitted being the driver. She was then charged and jailed. However, on October 15 and 16 she made statements which repudiated earlier statements. She said she was not the driver. Lorraine was eventually released and on November 5, Garry Henricks was arrested and charged with negligent homicide.

The appellant raises the following issues for our consideration: (1) whether or not the testimony and the physical evidence was sufficient to support the jury verdict; (2) whether witness identification of "a passenger with long hair" was tainted by police interviewing procedures; and (3) whether the District Court erred in refusing to allow lay witness opinion testimony?

Our standard in reviewing the sufficiency of the evidence is

clear. The test is "whether there is substantial evidence to support the conviction, viewed in the light most favorable to the State." State v. Lamb (1982), _____ Mont. _____, _____, 646 P.2d 516, 518, 39 St.Rep. 1021, 1024; see also, State v. Cook (1982), _____ Mont. _____, 645 P.2d 1367, 39 St.Rep. 1026; State v. Wilson (1981) _____ Mont. _____, 631 P.2d 1273, 38 St.Rep. 1040.

We stress that portion of the test which mandates review "in the light most favorable to the State." At the trial court the prosecution is obliged to prove every element of the crime. Such a requirement is obvious; issuing from the presumption of innocence. However, "on appeal after conviction the rule changes. Then, if the record shows any substantial evidence to support the judgment, the presumption is in favor of such judgment." State v. Stoddard (1966), 147 Mont. 402, 408, 412 P.2d 827, 831. As we said in State v. Caryl (1975), 168 Mont. 414, 422-423, 543 P.2d 389, 394, this Court "will assume the existence of every fact which the jury could have deduced from all the evidence to reach its verdict."

In this case there is more than substantial evidence to support the conviction. Lorraine Henricks stated unequivocally that Garry was driving when the accident occurred. Raelene Collins testified that she saw the defendant driving shortly before the accident. Another witness, one who was at the accident scene, testified that he got a glimpse of a passenger with long hair. On the night in question Garry had short hair and Lorraine had long hair; thus, allowing the jury to infer that Lorraine was the passenger. Still another witness, upon seeing the car speed by shortly after the accident, testified that he had the impression that the driver was a man. Finally, a medical doctor who examined the glass cut injuries of both Garry and Lorraine came to the conclusion that Garry's upper body along the left side was furthest away from the point of impact; thus, supporting an inference that Garry was the driver.

Next, appellant contends a due process violation arising

through the testimony of Mr. Stevens who testified at trial that he saw a passenger with long hair. Immediately after the accident this witness made a written statement. That statement made no mention of a "passenger with long hair." Eight days later, the witness made a six-page statement after being shown the hit-and-run vehicle and, it seems, after he had been shown a picture of Lorraine Henricks. According to appellant, the witness did not:

> "even know there was a passenger until the picture was shown to him. Thereafter, the state's technique is clear. Get somebody to say there is a passenger with long hair; show that Garry Henricks didn't have long hair on the night in question, and VIOLA! Garry Henricks was the driver."

The record does not contain the six-page statement made by the witness to the police eight days after the incident. Furthermore, the record does not clearly indicate whether or not the witness made the statement after or before seeing a photograph of Lorraine Henricks. Nonetheless, if we assume appellant's position, that the witness was shown a photograph of Lorraine and then made the written statement, presumably saying, "the passenger had long hair," there was no constitutional due process violation.

In support of his argument the appellant cites the cases of Simmons v. United States (1968), 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, and United States v. Fowler (9th Cir. 1971), 439 F.2d 133. In Simmons, several witnesses were individually shown six photographs. The photographs were group pictures of Simmons and others. All of the witnesses picked Simmons out of the photos and identified him as one of the bank robbers. The prosecution did not introduce the pictures into evidence, rather they relied on in-court identification by the several witnesses. On appeal to the United States Supreme Court, Simmons argued that the pretrial identification by means of photographs was unnecessarily suggestive and conducive to misidentification so as to deny him due process of law. However, the Supreme Court found no such

violation but stated the test: a conviction based on a photo identification will not be set aside unless "the procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384.

In Fowler, the accused was convicted of smuggling marijuana from Mexico to the United States. Fowler contended that the car in which the marijuana was found was not his; that he was merely driving the car to Los Angeles for a friend. Detectives learned that the car had been purchased two days earlier. The car salesman was found and shown two photographs of Fowler. The salesman identified Fowler as the person who had purchased the car two days earlier. At trial the photographs were shown to the witness who testified concerning his pretrial identification. The salesman also made an in-court identification of Fowler. The 9th Circuit Court, using the test of Simmons, found that the photographic identification procedure violated due process.

The facts in the case before us are dissimilar to those in Simmons and Fowler, however, a similar factual situation occurred in State v. Pendergrass (1980), _____ Mont. _____, 615 P.2d 201, 37 St.Rep. 1370 (Pendergrass II). In that case the defendant also alleged a due process violation resulting from a photographic identification procedure. Pendergrass was convicted of attempted robbery and sexual intercourse without consent. A prosecution witness saw a man get out of a pickup truck and walk toward the scene of the crime. The witness was shown six pictures of various individuals. The witness identified the defendant's picture as the photograph which most closely resembled the man he saw get out of the pickup truck and walk toward the crime scene. There was never a positive identification of the defendant. Likewise, in this case, there was never any identification. We found no due process violation in Pendergrass and we find none here. As in Pendergrass, "the defendant's remedy is in effective cross-examination with the identification question then becoming one of weight to be determined by the jury and not one of

- 6 -

admissibility." State v. Pendergrass (1978), 179 Mont. 106, 113, 586 P.2d 691, 695, (Pendergrass I), (citing State v. Miner (1976), 169 Mont. 260, 546 P.2d 252). "We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." Pendergrass II, _____ Mont. at _____, 615 P.2d at 204-205, 37 St.Rep. at 1374, (citing Manson v. Brathwaite (1977), 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140).

Finally, appellant contends that two lay witnesses should have been allowed to state their opinion as to whom they thought was driving the car. The two witnesses did not actually see the incident but were in contact with the parties shortly after the incident. Appellant argues that these witnesses should have been allowed to give their opinion pursuant to Rule 701, Mont.R.Evid.

The comments to Rule 701 state that the requirements of the rule are not to be considered as exceptions but as safeguards. Thus, if the offered testimony is based upon personal knowledge in accordance with Rule 602, Mont.R.Evid., is rationally based upon the perception of the witness (ensuring that the opinion would ordinarily be the result of a particular perception); and, the opinion is helpful to a clear understanding of the witnesses' testimony or the determination of a fact in issue, then the offered evidence should be allowed.

We do not believe that the offered evidence is of the kind the rule intends to allow. According to the comments the rule "expresses the intention of the Federal drafters of '. . . putting the trier of fact in possession of an accurate reproduction of the event.' Advisory Committees' Note to Federal Rule 701, 56 F.R.D. 183, 281 (1972)." Thus, the rule primarily envisions lay witness opinion testimony from witnesses who were in a position to perceive an event. The two witnesses here did not see the accident. Their opinions were based upon their percep-

tions after the accident. Furthermore, the record indicates that at least one of these witnesses would have testified contrary to statements given at a pretrial investigative subpoena proceeding. Certainly, these circumstances weigh in the discretionary rulings of the District Court. We find no error.

The conviction is affirmed.

_____
Justice

We concur:

_____
_____
_____
_____
Justices

- 8 -