673 P.2d 297

**STATE of Arizona, Appellee,**

v.

**Mark Alan KOCH, Appellant.**

No. 5527.

Supreme Court of Arizona,
In Banc.

Oct. 6, 1983.

Reconsideration Denied Nov. 22, 1983.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee.

Nancy Grey Postero, Tucson, for appellant.

GORDON, Vice Chief Justice:

On February 9, 1982, a jury found appellant guilty of first degree murder in violation of former A.R.S. §§ 13–451 and 452. On March 9, 1982, he was sentenced to life in prison without possibility of parole for twenty-five years. This Court has jurisdiction to hear this appeal pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 13–4031. The judgment of conviction and the sentence are affirmed.

On May 24, 1976, the body of Richard Johnson, whose hands were crippled by arthritis, was found near his car in the desert north of Tucson, Arizona. The investigation of the killing originally focused on a Michael Cassius, but ran into a dead end. It was not until approximately December of 1977 that the authorities became aware of appellant's possible involvement. Detectives learned that appellant and three friends had been in Tucson at the time Richard Johnson disappeared. Late at night, on the way back to Phoenix from Tucson, the car appellant and his friends were riding in broke down. Appellant went to get help and was picked up in a car fitting the description of Johnson's car, driven by someone with abnormal hands. Appellant did not return to the disabled car that night. The following morning a friend of appellant's in Phoenix, Danny Rivera, received a phone call from appellant asking for help with the disabled car. Furthermore, appellant told Rivera to pick him up by the side of Interstate 10 on the way into Tucson. Rivera set out for Tucson with Bruce McGhee. They had some trouble locating appellant but eventually found him by the side of Interstate 10. They proceeded to Tucson where they rejoined appellant's other friends and fixed the car. They then returned to Phoenix. Though there were inconsistencies in their stories, both Rivera and McGhee stated that after appellant was picked up he indicated that he had killed a crippled man the night before and left him in the desert.

Appellant raises six issues on appeal: (1) whether his motion for mistrial was properly denied; (2) whether certain opinion evidence was properly excluded; (3) whether a hearsay description and composite drawing were properly excluded; (4) whether certain questioning by the prosecutor denied him a fair trial; (5) whether a jury instruction was properly given; and (6) whether the trial judge acted improperly in sending a note to the jury.

### Motion for Mistrial

Danny Rivera was a witness at appellant's trial. During direct examination Rivera referred to someone as "the prosecutor against me and Mark [the appellant]."[1] Appellant moved for a mistrial claiming that Rivera's statement alerted the jury to the fact that he was involved in other criminal activity. The motion was denied. No cautionary instruction was requested and none was given. Appellant argues that the denial of the motion for mistrial was reversible error. We, however, find no error.

The decision to grant or deny a motion for mistrial rests within the sound discretion of the trial court and the failure to grant a motion for mistrial is error only if such failure was a clear abuse of discretion. *United States v. Kahan & Lessin Co.,* 695 F.2d 1122 (9th Cir.1982); *United States v. Jackson,* 585 F.2d 653 (4th Cir.1978); *United States v. Nace,* 561 F.2d 763 (9th Cir. 1977); *United States v. Love,* 535 F.2d 1152 (9th Cir.), *cert. denied,* 429 U.S. 847, 97 S.Ct. 130, 50 L.Ed.2d 119 (1976); *United States v. Faulkenbery,* 472 F.2d 879 (9th Cir.), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2161, 36 L.Ed.2d 692 (1973); *State v. Ramirez,* 116 Ariz. 259, 569 P.2d 201 (1977). This is because the trial judge is always in the best position to determine whether a particular incident calls for a mistrial. The trial judge is able to sense the atmosphere of the trial, the manner in which the objectionable statement was made, and the possible effect it had on the jury and the trial. *United States v. Jackson, supra; United States v.*

---

1. Apparently the court reporter did not hear this statement as it does not appear in the trial transcript. It is clear from the arguments on appellant's motion for a mistrial, however, that the statement was made.

*Nace, supra; United States v. Love, supra; United States v. Faulkenbery, supra.*

In the instant case, the trial judge found that Rivera's statement was inadvertent, not solicited by the prosecutor, and that, in context, the jury did not appreciate the statement as associating appellant with other criminal activity. We cannot say the trial judge abused his discretion in so finding. *United States v. Love, supra; United States v. Faulkenbery, supra; State v. Favors,* 92 Ariz. 147, 375 P.2d 260 (1962); *cf. United States v. Wyant,* 576 F.2d 1312 (8th Cir.1978) (unsolicited statement from witness not grounds for mistrial or cautionary instruction); *United States v. Resnick,* 488 F.2d 1165 (5th Cir.), *cert. denied,* 416 U.S. 991, 94 S.Ct. 2400, 40 L.Ed.2d 769 (1974) (motion for mistrial based on introduction of evidence of unrelated criminal activity properly denied); *United States v. Jackson,* 423 F.2d 506 (9th Cir.), *cert. denied,* 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970) (witness' passing reference to fact that defendant had "another case" was not grounds for mistrial).

## Opinion Evidence

One of the theories advanced by appellant in his defense was that Michael Cassius had killed the victim. Part of this defense rested on the testimony of Henry Clark. Clark had spent several days in a Pima County holding tank with Cassius and a William Taylor in 1976. During this confinement, Cassius spoke of the murder of Richard Johnson in some detail. Later, in an effort to strike a bargain with the state regarding his sentence, Clark related this conversation with Cassius to detectives. His statement to the detectives was tape-recorded and concluded with Clark saying "I am quite sure he [Cassius] did it." At appellant's trial, however, Clark testified that Cassius' statements in the holding tank referred only to a murder for which he (Cassius) was being investigated and that

Cassius was merely relating how he was supposed to have committed the crime. The tape recording, except for Clark's concluding statement, was played for the jury. A transcript thereof, also minus Clark's concluding statement, was admitted into evidence. Appellant vigorously used Clark's earlier statement to the detectives in an effort to impeach him and objected to the trial judge's exclusion of Clark's concluding comment. Appellant now argues that this exclusion constitutes reversible error. We do not agree.

The trial court excluded Clark's opinion as to Cassius' guilt because it embraced an ultimate issue to be decided by the jury. However, Rule 704, 17A A.R.S. Rules of Evid., provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Thus, the trial judge's exclusion of the statement was not proper on this ground. On appeal, this Court will uphold the trial court's judgment if the correct legal result was reached even though based on the wrong reason. *State v. Dugan,* 113 Ariz. 354, 555 P.2d 108 (1976). We find that Clark's opinion that Cassius killed the victim was properly excluded based on Rule 701, 17A A.R.S. Rules of Evid.

Rule 701 provides that lay testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."[2] At the time of his conversation with Cassius, Clark did not know of any of the circumstances surrounding the killing of Richard Johnson; he was not even aware that there had been a killing. Clark's only perception even remotely connected with the killing was his discussion with Cassius. That is simply not suffi-

---

2. Limitation (a) is the familiar requirement of first-hand knowledge or observation embodied in Ariz.R.Evid. 602. *See* Fed.R.Evid. 701 Advisory Committee's Note; 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 701[02] at 701– 10 (1982); *cf. State v. Jessen,* 130 Ariz. 1, 7, 633 P.2d 410, 416 (1981) (witness' testimony was not admissible as a lay witness opinion under rule 701 because not "based on personal knowledge.")

cient to rationally support an opinion regarding who was responsible for the killing. There may well be cases in which a witness' perception includes not only a conversation with an individual, but also sufficient knowledge of the circumstances of the act or a sufficiently close association with the individual that the witness may rationally opine that the individual did the act. *Cf. State v. Williams,* 133 Ariz. 220, 650 P.2d 1202 (1982) (woman's recorded opinion that she believed her boyfriend's confession to her that he had murdered his ex-wife ruled admissible). The instant case, however, is not such a case. There is no evidence that Clark and Cassius knew each other prior to each being put in the holding tank. In addition, Cassius had a self-serving motive for discussing the killing[3] and Clark had a self-serving motive for relating that discussion to the detectives.[4] None of these factors or the fact that appellant cross-examined Clark on his apparent change in perception of Cassius' statement heighten the reliability of Clark's perception or his resultant opinion. As Clark's opinion that he was "quite sure" Cassius killed the victim cannot be said to have been rationally based on Clark's perceptions, it was properly excluded. *See United States v. Skeet,* 665 F.2d 983, 985 (9th Cir.1982) (opinion testimony properly excluded because not "predicated on concrete facts within [the witnesses'] own observation and recollection—that is facts perceived from their own senses, as distinguished from opinions or conclusions drawn from such facts," quoting *Randolph v. Collectramatic, Inc.,* 590 F.2d 844, 847–48 (10th Cir.1979)); *State v. Henricks,* 653 P.2d 479, 482 (Mont.1982) (because "[t]he two witnesses here did not see the accident," and because "[t]heir opinions were based

upon [contact with the parties shortly] after the accident" their opinion as to who was driving the car was not rationally based on their perception and properly excluded); *cf. State v. Adamson,* 136 Ariz. 250, 665 P.2d 972, *cert. denied,* —— U.S. ——, 104 S.Ct. 204, 77 L.Ed.2d 178 (1983) (statement by car bombing victim that defendant "did it" based upon facts that defendant arranged meeting at hotel, called victim while he was waiting at hotel to change meeting place, and bomb was detonated in parking lot as victim was leaving to go to newly-arranged meeting place should not have been admitted because not sufficiently based on victim's personal knowledge).

Hearsay Description and Composite

One of the witnesses at appellant's trial was Sergeant De Guzman of the Pima County Sheriff's Department. During cross-examination it was established that two days after the victim's body was discovered, at the direction of a detective, De Guzman spoke with a Mr. Arthur Hyatt. Hyatt reported that he had information about a "suspect" in the Johnson killing and gave a description. Using an "Identi-Kit," De Guzman made a composite of this suspect and then photographed the composite.[5] By the time of appellant's trial the photograph had been lost. De Guzman's police report, which contained Hyatt's description and the information necessary to reconstruct the composite, however, were available. In his questioning of De Guzman, defense counsel attempted to get the description contained in the report into evidence. The prosecutor's hearsay objections were sustained. At a later proceeding outside the jury's presence, defense counsel argued that the loss of the photograph of the com-

---

**3.** The third person in the holding tank, William Taylor, and Cassius were accused of being co-conspirators in another crime. Cassius had been called out of the cell frequently by detectives questioning him about the Richard Johnson killing. Taylor, apparently afraid that Cassius was going to turn state's evidence, confronted him as to why he was being called out so often. To appease Taylor, Cassius detailed the murder about which he was being questioned. Their cellmate, Clark, also heard Cassius recounting the matter.

**4.** Clark told detectives, among other things, about Cassius' comments in exchange for the withdrawal of a four-to-twelve year prison sentence and the substitution of a six year probation term.

**5.** The description did not match appellant, Michael Cassius, or anyone else connected with the case.

posite violated pre-trial disclosure rules and he moved to have the charges against appellant dismissed. In the alternative, he argued that the description was admissible as an exception to the hearsay rule under Ariz.R.Evid. 803(1) or 803(24). We find that the trial court properly ruled against appellant.

■ First, we find that the loss of the photograph of the composite, resulting in appellant not being provided a copy, did not violate pre-trial disclosure rules. Ariz.R. Crim.P. 15.1(a)(7) requires that the prosecutor make available to the defendant "material or information which tends to mitigate or negate the defendant's guilt." The photograph of the composite in the instant case falls within this rule and, if the state had the photograph in its possession, the rule would require its disclosure. The state did not have the photograph. It did, however, have the formula from which the composite could have been reproduced and, therefore, the prosecutor could have made another photograph and disclosed it. The question is whether Rule 15.1 required that he do so. We hold that it did not.

Appellant was provided with De Guzman's report. The report indicated that Arthur Hyatt had given a description, that a composite based on that description was made, and that a photograph of the composite was taken. Furthermore, the report included the formula from which the composite could have been reproduced. Appellant was in just as good a position to create a new photograph of the composite as was the state. Consequently, in the absence of any request by appellant that it do so, the state was not required by Rule 15.1 to produce a new photograph of the composite for appellant.

■ Second, we find that the trial court correctly ruled that Hyatt's statements to De Guzman describing a person were admittedly hearsay and not within the Rule 803(1) or 803(24) exceptions. Rule 803(1), entitled "present sense impression", creates an exception to the hearsay rule for statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." In the instant case, Hyatt, the declarant, was not relating the description while he was perceiving the person or immediately thereafter. Indeed, it cannot be determined from the information available how Hyatt obtained his information. Hyatt's statements are not present sense impressions under Rule 803(1).

Furthermore, the description does not fall within the exception to the hearsay rule created by Rule 803(24). Rule 803(24) provides an exception for statements "not specifically covered by any of the foregoing exceptions [803(1)–(23)] but having equivalent circumstantial guarantees of trustworthiness" provided the trial court makes other specific determinations. In the instant case, there are no circumstantial guarantees of the trustworthiness of Hyatt's statement. As stated above, there is no information indicating how Hyatt obtained his information. Hyatt's statements do not fall within Rule 803(24).

■ Appellant makes an additional argument on appeal. He claims, for the first time, that his failure to lay a proper foundation for the admission of Hyatt's hearsay statements was the state's fault. It was the state's fault, appellant claims, because the state, either because it failed to collect the information or because it lost the information, could not provide him with the information about Hyatt necessary to lay the foundation. Consequently, appellant's argument concludes, as a sanction the trial court should have waived any foundation requirements or at least given an instruction about lost evidence such as was approved in *State v. Willits,* 96 Ariz. 184, 393 P.2d 274 (1964). Appellant's claim is without merit.

We note parenthetically that there is no indication that the state lost or destroyed any information concerning Hyatt. In any event, in the court below appellant did not make this argument nor did he request that foundational requirements be waived or that a *Willits* instruction be given. The trial judge may or may not have considered

such sanctions appropriate. We hold, however, that he certainly was not required to impose them on his own motion.

### Question by Prosecutor

■ At his trial, appellant called Larry Raidy, an Arizona State Prison inmate, as a defense witness. During cross-examination by the prosecutor the following exchange occurred:

"Q. How long have you known Mark Koch?

"A. Since about 1969.

"Q. Are you and he pretty good friends?

"A. Never real close, but we were friends.

"Q. Do you belong to any organizations that Mark Koch belongs to?

"[DEFENSE COUNSEL]: Objection, Your Honor.

"THE COURT: Yes, I'll sustain the objection."

Appellant argues that by asking the question about membership in organizations the prosecutor was improperly implying that both appellant and Raidy were members of the Aryan Brotherhood. This, appellant argues, was improper evidence of his bad character. Appellant's argument fails.

There is nothing in the prosecutor's question that would lead the jury to infer that appellant belonged to the Aryan Brotherhood or any other sinister organizations. The Aryan Brotherhood was never mentioned during the trial and there is no indication that the jury even knew it existed. Questioning of Raidy revealed that he and appellant had known each other since 1969 and had gone to high school together. They could have been members of any number of organizations. In context, the prosecutor's questioning appears to be nothing more than an attempt to show that Raidy and appellant were long time friends and, therefore, that Raidy was biased in favor of appellant. It did not amount to improper evidence of appellant's bad character.

### Jury Instruction

In its instructions to the jury, the trial court told the jury:

"In deciding whether the Defendant is guilty or not guilty, do not consider the possible punishment. However, you are advised that the death penalty does not apply in—in this particular case."

Appellant argues that this instruction was improper because it brought information about possible sentencing before the jury. He argues that it was prejudicial because it promised the jury that appellant would receive a light sentence if convicted, thus convincing the jury to convict on weak evidence. We agree with appellant that the instruction should not have been given. We do not agree, however, that appellant was prejudiced by the improper instruction.

■ In a criminal trial in Arizona, the exclusive function of the jury is to determine whether the defendant is guilty or not guilty. The trial court determines matters of punishment. "A defendant is entitled to a fair trial and to a verdict of a jury upon the evidence without consideration of the punishment inflicted," *State v. Burnetts,* 80 Ariz. 208, 212, 295 P.2d 377, 379 (1956). *See State v. Van Dyke,* 127 Ariz. 335, 621 P.2d 22 (1980). Consequently, a trial court's jury instructions generally should not touch on the subject of punishment except to advise the jury not to consider it.

■ When jury instructions improperly mention the subject of punishment, the reviewing court must determine whether the error was prejudicial. *United States v. Davidson,* 367 F.2d 60 (6th Cir.1966). In the context of this case, the reference to punishment might have been prejudicial if it had suggested that appellant, if convicted, would be treated with leniency, and had thereby induced the jurors to reach a compromise verdict. *See United States v. Glick,* 463 F.2d 491 (2d Cir.1972) and *United States v. Davidson, supra* (trial judge instructed deadlocked jury that it could recommend leniency and jury shortly thereafter returned guilty verdict with recommendation of leniency). If, however, the reference to punishment did not indicate that appellant would be treated with leniency or does not appear to have induced a compromise on the part of the jury and if the jury was properly instructed not to consider pun-

ishment, then there is no appreciable danger of prejudice. *See United States v. Cox,* 696 F.2d 1294 (11th Cir.1983) (trial court explained range of possible punishment but did not refer to a specific maximum, did not intimate what sentence he might be inclined to give, and informed the jurors that potential punishment was not their concern); *United States v. Calandrella,* 605 F.2d 236 (6th Cir.), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979) (trial judge inadvertently told jury possible sentence but then told jury not to consider punishment and to disregard his earlier remarks); *United States v. Paduano,* 549 F.2d 145 (9th Cir.), *cert. denied,* 434 U.S. 838, 98 S.Ct. 129, 54 L.Ed.2d 100 (1977) (trial judge advised non-deadlocked jury it could recommend leniency but that the question of punishment was up to the court and shortly thereafter jury returned guilty verdict with no recommendation of leniency); *United States v. Craig,* 477 F.2d 129 (6th Cir.1973) (trial judge explained sentencing procedure but did not indicate leniency would be granted and advised jury that punishment was up to the judge); *United States v. Jackson,* 470 F.2d 684 (5th Cir.1972), *cert. denied,* 412 U.S. 951, 93 S.Ct. 3019, 37 L.Ed.2d 1004 (1973) (trial judge advised non-deadlocked jury that it could recommend leniency but also made clear that the court made the ultimate determination as to punishment); *Pittman v. United States,* 368 F.2d 560 (9th Cir.1966) (trial court made reference to its broad power over the defendant in the event of his guilt but followed the erroneous comment with instruction that jury was to disregard possible punishment in arriving at its decision); *Erwin v. United States,* 242 F.2d 336 (6th Cir.1957) (trial judge's instruction that in the event of a guilty verdict certain mitigating circumstances should be considered by the Court in setting sentence, was not reversible error).

We find that the instant case falls within the category of cases in which there was no appreciable danger of prejudice. The erroneous instruction advised the jury that the death penalty did not apply to the case. It did not indicate what sentence might be imposed nor did it suggest that appellant would not receive the maximum sentence applicable in the event he was found guilty. Even if the instruction may be interpreted as suggesting appellant would be treated with leniency, there is no indication that the jury was induced to compromise on that basis. The instant case is not like *United States v. Glick, supra, United States v. Davidson, supra,* or *State v. Burnetts, supra,* in which consideration of leniency clearly played a part in the jury deliberations, and, in *Glick* and *Davidson,* actually "unlocked" deadlocked juries. Furthermore, the erroneous instruction was accompanied by a proper instruction advising the jury that it was not to consider possible punishment in reaching its verdict. We will not presume that the jurors ignored this admonition absent some indication that they did. *State v. Parker,* 116 Ariz. 3, 567 P.2d 319 (1977); *State v. Reynolds,* 125 Ariz. 530, 611 P.2d 117 (App.1980). We conclude that appellant was not prejudiced by the erroneous instruction and his conviction need not be reversed on that basis.

### Note to Jury

After the jury retired to deliberate, it sent a note to the trial judge stating: "Can we see some of the transcript?" Without notifying appellant, his counsel, or the prosecutor, the trial judge sent a note to the jury stating: "None of the Reporter's notes have been transcribed. Therefore, you should depend on your collective recollections." Appellant argues that by communicating with the jury without notifying him the trial judge committed reversible error. We find that the judge did err in failing to notify appellant of the jury's note and his intended response before sending the response to the jury. We find, however, that appellant could not possibly have been prejudiced by the error.

In Arizona, a trial judge may not communicate with a jury unless the defendant and counsel have been notified and given the opportunity to be present. *State*

*v. McDaniel,* 136 Ariz. 188, 665 P.2d 70 (1983); *State v. Mata,* 125 Ariz. 233, 609 P.2d 48, *cert. denied,* 449 U.S. 938, 101 S.Ct. 338, 66 L.Ed.2d 161 (1980); *see,* Rule 22.3, 17 A.R.S.R.Crim.Proc. This is true whether the communication occurs before or after the jury retires to deliberate. *State v. Mata, supra.* The trial judge in the instant case should have notified appellant and his counsel before sending the note to the jury.

It is also the rule, however, that reversal is not required if it can be said beyond a reasonable doubt that the defendant was not prejudiced by the improper communication. *State v. McDaniel, supra; State v. Mata, supra; State v. Benford,* 129 Ariz. 447, 631 P.2d 1105 (App.1981). This rule was applied in *State v. McDaniel, supra.* In *McDaniel,* the jury requested transcripts of the testimony of two witnesses. The trial court responded with a note stating: "It is not available." 136 Ariz. at 197, 665 P.2d at 79. This Court held that this communication to the jury, though improper, was not prejudicial. We held that it operated simply as a refusal to answer, that it did not involve the judge giving the jury information concerning the facts or law applicable to the case, and, therefore, that it could not have had any coercive effect on the jury. The improper communication in the instant case is indistinguishable from that in *McDaniel.* Furthermore, there are no circumstances present in this case suggesting that the communication, though non-prejudicial in *McDaniel,* was prejudicial in this case. Consequently, we conclude, as we did in *McDaniel,* that the error was not prejudicial and reversal is not required. *See also State v. Mata, supra; State v. Benford, supra.*

We have examined the record for fundamental error as required by A.R.S. § 13–4035 and find none. The judgment of conviction and the sentence are affirmed.

HOLOHAN, C.J., and HAYS and CAMERON, JJ., concur.

FELDMAN, Justice, specially concurring.

I write because I disagree with the majority's analysis of the issues pertaining to Clark's characterization of the "Cassius confession."

Defendant contends that even though the excluded portion of the tape was an opinion not based on perception, it was admissible as impeachment of Clark's direct testimony. The trial judge recognized this issue by stating that the

> . . . version that [Clark] gives now in his present testimony . . . is certainly less beneficial to the defense than the version that he gave in that statement that he made to Detective Gordon. . . . Back then [Clark] flat out indicated well, sure [Cassius] was telling me what he had done [, and] so therefore I believe[d] that he had done it. . . . Now [Clark has] come off of that strong a statement, and . . . puts in the word [Cassius] was being investigated for [the crime] and supposedly . . . had done [it].

In other words, the issue before the jury was whether Cassius' statement to Clark was a confession of a crime or an explanation of the police investigation. The initial statement to the police that "I am quite sure [Cassius] did it," may therefore have been admissible, not for the substantive purpose of showing Clark's opinion, but as impeachment of Clark's trial testimony which implied—though never explicitly stated—that Cassius had described an investigatory process rather than made a confession. *See State v. Williams,* 133 Ariz. 220, 650 P.2d 1202 (1982).

Of course, Clark's opinion with regard to whether Cassius was truly confessing was not admissible on either side of the issue. If admitted on one side, it was subject to impeachment directly or indirectly on the other. However, Clark was never directly asked and never directly stated whether Cassius had been confessing or merely relating police suspicions and, at best, the excluded portion of the statement had only an indirect tendency to impeach. In addi-

tion, Clark did admit under cross-examination by defense counsel that he had not told the police that Cassius was simply relating investigatory information and that his initial statement had told the police "what Cassius did."

Q. You said [Cassius] did it three times here?

A. Yes.

Under these circumstances, I believe that even if the portion should not have been excluded, the error, if any, was not prejudicial.