NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JAYDA AILEEN FORTUNE, *Appellant.*

No. 1 CA-CR 19-0635
FILED 9-1-2020

Appeal from the Superior Court in Coconino County
No. S0300CR201700839
The Honorable Mark R. Moran, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist, III
*Counsel for Appellee*

Coconino County Public Defender's Office, Flagstaff
By Brad Bransky
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Chief Judge Peter B. Swann joined.

_____

**C A M P B E L L**, Judge:

¶1          Jayda Fortune appeals her conviction and sentence for manslaughter. She argues the superior court erred by denying her *Batson* challenge and motion for mistrial. For the following reasons, we affirm.

**BACKGROUND**[1]

¶2          Gathered in a motel room for an evening "hang out," a group of eight teenagers and young adults drank alcohol and socialized. As the evening progressed, two girls, Mirelle Gorman and Fortune, accused the victim of inappropriately touching them. Angered by the alleged unwelcome advances, Gorman and Fortune repeatedly punched and kicked the victim in the face and head while he laid on a bed, too intoxicated to defend himself. Two male attendees, Lawrence Sampson-Kahn and Kayson Russell, also punched and/or kicked the victim at least once, knocking him to the floor.

¶3          After the physical altercation, Gorman, Fortune, Sampson-Kahn, and Russell left the motel. The rest of the group spent the night in the room, with the victim left on the floor. When the victim was nonresponsive the next morning, the remaining attendees called 9-1-1. Once medical personnel arrived, they pronounced the victim dead.

¶4          The State charged Fortune with second-degree murder.[2] The State also alleged several aggravating factors. At trial, the State presented evidence that blood found on Fortune's shoe belonged to the victim. The State also introduced the medical examiner's findings that the victim died

_____

[1]     We view the facts in the light most favorable to sustaining the verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

[2]     Although the State also charged Fortune with underage consumption of alcohol, she does not contest that conviction on appeal.

from a subdural hematoma on the left side of his brain, caused by multiple blunt force injuries to his face and head.

¶5 A jury found Fortune not guilty of second-degree murder but guilty of the lesser-included offense of manslaughter. After Fortune waived her right to a jury determination of aggravating factors, the superior court found she: (1) committed the offense with accomplices, and (2) caused emotional and financial harm to the victim's family. Nonetheless, finding several mitigating factors as well, the court sentenced Fortune to a mitigated term of four years' imprisonment. Fortune timely appealed.

## DISCUSSION

### I. Denial of *Batson* Challenge

¶6 Arguing the superior court improperly denied her *Batson* challenge, Fortune contends the prosecutor engaged in purposeful religious discrimination by exercising a peremptory strike to remove a pastor from the venire panel. *See Batson v. Kentucky*, 476 U.S. 79 (1986).

¶7 Use of peremptory strikes to exclude potential jurors solely based upon race, gender, or some other protected characteristic violates the Equal Protection Clause of the Fourteenth Amendment. *Flowers v. Mississippi*, 139 S. Ct. 2228, 2242–43 (2019); *State v. Lucas*, 199 Ariz. 366, 368, ¶ 7 (App. 2001). "To successfully challenge a peremptory strike, a party must set forth a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *State v. Paleo*, 200 Ariz. 42, 43, ¶ 6 (2001) (internal quotation omitted). "The burden of production then shifts to the opponent who must explain adequately the . . . exclusion." *Id.* (internal quotation omitted). "The court then evaluates the facts to determine whether a party engaged in purposeful discrimination." *Id.* at 44. "Throughout the process, the burden of persuasion remains on the party alleging discrimination." *Id.*

¶8 We will uphold the denial of a *Batson* challenge absent clear error. *State v. Newell*, 212 Ariz. 389, 400, ¶ 52 (2006). Moreover, we will affirm the superior court's decision "if it is correct for any reason, even if that reason was not considered" by the court. *Glaze v. Marcus*, 151 Ariz. 538, 540 (App. 1986).

¶9 During voir dire, Juror No. 14 reported that both she and her husband are pastors at a local Methodist church. Before the jury was empaneled, defense counsel objected to the State's use of a peremptory strike to remove Juror No. 14, arguing the prosecutor's motivation in

exercising the strike was religious discrimination. In response, the prosecutor acknowledged that he struck Juror No. 14, in part, because she was a pastor and he believed her occupation could create "an issue with sympathy or forgiveness." The prosecutor also stated, however, that another attorney in the prosecutor's office knew Juror No. 14 personally and regarded her as "very liberal" and "inclined to make up her own rules." At that point, the superior court denied the motion, finding Juror No. 14 did not fall within "a class of protected persons that might raise a colorable claim for [*Batson*]" and therefore the State had no need to provide a "neutral reason" for striking her.

**¶10**          In Arizona, *Batson* has been extended to protect against discriminatory jury selection practices "based upon religious membership or affiliation." *State v. Purcell*, 199 Ariz. 319, 326, ¶ 25 (App. 2001). But in a similar case, the Arizona Supreme Court concluded that a prosecutor's exercise of a peremptory strike to remove a pastor based on a concern that "pastors are forgiving" was a neutral reason that, coupled with other bases for removal, "more than satisfie[d] *Batson*." *State v. Martinez*, 196 Ariz. 451, 456, ¶¶ 15–17 (2000) (analogizing pastors to social workers and concluding "there would [be] no question about the validity of [a] strike" to exclude a social worker as too "forgiving").

**¶11**          Applying *Martinez* here, the State did not strike Juror No. 14 because she is Christian. Instead, the State struck the juror, in part, because she is a pastor and, by occupation, may be predisposed to extend forgiveness or absolution. The superior court did not clearly err by finding the State's peremptory strike did not violate *Batson*.

## II.          Denial of Motion for Mistrial

**¶12**          Fortune contends the superior court improperly denied her motion for mistrial. Specifically, she asserts the court should have declared a mistrial after repeated emotional outbursts from members of the victim's family.

**¶13**          A mistrial is "the most dramatic remedy for trial error" and should be granted only when "justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Adamson*, 136 Ariz. 250, 262 (1983). Because the superior court is "in the best position to determine whether a particular incident calls for a mistrial," we uphold its decision to grant or deny a motion for mistrial absent a clear abuse of discretion. *State v. Koch*, 138 Ariz. 99, 101 (1983); *see also State v. Jones*, 197 Ariz. 290, 304, ¶ 32 (2000).

¶14        After the prosecutor concluded his opening statement, defense counsel moved for a mistrial, citing "three separate" instances when the victim's representatives "audibl[y] cr[ied] and gasp[ed]" in front of the jury. In response, the prosecutor acknowledged hearing a single, "stifled cry" and urged the court to simply instruct the jury "about sympathy and to disregard any kind of reactions." While agreeing with defense counsel that "there was some weeping or crying . . . on at least two occasions," the court did not observe any reaction from the jurors and denied the motion for mistrial. Although the court stated that it would provide "a curative instruction," as requested by the prosecutor, it did not do so. Instead, the court only provided a sympathy instruction as part of the final jury instructions, admonishing the jurors "not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion, or public feeling."

¶15        The day after the jury rendered its verdict, Juror No. 2 submitted a letter to the superior court. Detailing the deliberation process, the juror stated that she was "deeply affected" by the "wailing" of a victim's representative during opening statements, claiming it "tainted" her decision to find Fortune guilty of manslaughter rather than negligent homicide.

¶16        Citing Juror No. 2's post-trial statements, Fortune argues the superior court incorrectly found that no juror was affected by the emotional outbursts and therefore erroneously denied the motion for mistrial. It is well-settled, however, that a jury verdict cannot be impeached by a juror who agreed in open court to the verdict. *State v. Kiper*, 181 Ariz. 62, 68 (App. 1994). Once a verdict is announced in open court and the jury is polled with no dissent registered, a verdict becomes final and is "not subject to further reconsideration by the jurors." *Id*. at 68–69.

¶17        Here, Fortune does not dispute, and the record clearly reflects, that each juror affirmed the accuracy of the manslaughter verdict in open court. Although a court may consider a juror's testimony or affidavit when a verdict is challenged based on certain juror misconduct, none of the enumerated exceptions apply in this case. *See* Ariz. R. Crim. P. 24.1(c)(3), (d) (permitting a court to receive testimony or an affidavit concerning juror misconduct, but prohibiting testimony or an affidavit relating "to the subjective motives or mental processes leading a juror to agree or disagree with the verdict").

¶18        To the extent Fortune argues that the superior court should have questioned the jurors after opening statements to determine whether

they were affected by the emotional outbursts, we note she did not request such a remedy. *See Koch*, 138 Ariz. at 101 ("The trial judge is able to sense the atmosphere of the trial, the manner in which the objectionable statement was made, and the possible effect it had on the jury and the trial."). Moreover, while the court initially stated it would provide a curative instruction on sympathy and did not do so, the record reflects that the court admonished the jurors not to be influenced by sympathy in both its preliminary and final instructions. On this record, the superior court acted well within its discretion by denying Fortune's motion for mistrial.

**CONCLUSION**

¶19        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:       AA